# EXHIBIT 9

EJ9

# Case Summary

## Case No. 2016CV274425

| | | |
|---|---|---|
| **Janet Hill,Michelle Lindsay-Bailey,Reginald Wilborn,Bilal Rasheed,Aaron Graves VS. BAYVIEW FINANCIAL, LP a/k/a BAYVIEW LOAN SERVICING LLC.,,Rubin Lublin, LLC,The Bank of New York Mellon FKA The Bank of New York as Trustee,Mortgage Electronic Registration Systems, Inc AKA Merscorp, Inc.,Ditech Financial LLC, F/K/A/ Green Tree Servicing, LLC,Specialized Loan Servicing, LLC,Ellis, Painter, Ratterree & Adam LLP,McCalla Raymer, LLC,The Bank of New York Mellon as Trustee for purported CSWABS, Inc.,CWALT, Inc.,CWHEQ Revolving Home equity Registered Loan Trusts** | § <br> § <br> § <br> § <br> § <br> § | Location <br> **EJ9** <br> Judicial Officer <br> **GOGER, JOHN** <br> Filed on <br> **04/27/2016** |

---

## Case Information

|  |  |
|---|---|
| Case Type: | OTHER CIVIL CAUSE OF ACTION |
| Case Status: | **06/20/2018   Closed** |

## Statistical Closures

06/20/2018   Dismissed Without Prejudice

---

## Party Information

| | | Lead Attorneys |
|---|---|---|
| **PLAINTIFF** | **Graves, Aaron** | **Bailey, Gregory T.** *Retained* |
| | **Hill, Janet** | **Bailey, Gregory T.** *Retained* |

| | | |
|---|---|---|
| | Lindsay-Bailey, Michelle | **Bailey, Gregory T.**<br>*Retained* |
| | Rasheed, Bilal | **Bailey, Gregory T.**<br>*Retained* |
| | Wilborn, Reginald | **Bailey, Gregory T.**<br>*Retained* |
| **DEFENDANT** | BAYVIEW FINANCIAL, LP a/k/a BAYVIEW LOAN SERVICING LLC., | **MENDEL, JARROD**<br>*Retained*<br><br>**MENDEL, JARROD**<br>*Retained* |
| | CWALT, Inc. | |
| | CWHEQ Revolving Home equity Registered Loan Trusts | |
| | Ditech Financial LLC, F/K/A/ Green Tree Servicing, LLC | **ROGERS, PAUL A.**<br>*Retained* |
| | Ellis, Painter, Ratterree & Adam LLP | |
| | McCalla Raymer, LLC | **KASPER, JONATHAN H**<br>*Retained* |
| | Mortgage Electronic Registration Systems, Inc AKA Merscorp, Inc. | **ROGERS, PAUL A.**<br>*Retained* |
| | Rubin Lublin, LLC | |
| | Specialized Loan Servicing, LLC | **Anulewicz, Christopher Scott**<br>*Retained* |
| | The Bank of New York Mellon as Trustee for purported CSWABS, Inc. | **Anulewicz, Christopher Scott**<br>*Retained* |
| | The Bank of New York Mellon FKA The Bank of New York as Trustee | **Anulewicz, Christopher Scott**<br>*Retained* |

## Events and Orders of the Court

07/02/2018    **TRIAL**    (9:30 AM)    (Judicial Officer: GOGER, JOHN)

06/20/2018    📄
          DISMISSAL WITHOUT PREJUDICE

06/20/2018    **DISMISSED WITHOUT PREJUDICE**   (Judicial Officer: GOGER, JOHN)

06/18/2018    📄
          MOTION

06/18/2018    📄
          EXTENSION OF TIME

06/14/2018    📄
          STATEMENT OF MATERIAL FACTS

06/14/2018    📄
          MOTION FOR SUMMARY JUDGMENT

06/13/2018    📄
          MOTION

06/08/2018    📄
          NOTICE

05/24/2018    📄
          ORDER

05/17/2018    📄
          REQUEST

03/14/2018    📄
          LEAVE OF ABSENCE

10/20/2017    📄
          MOTION

10/11/2017    📄
          CERTIFICATE OF SERVICE

09/08/2017    📄
          STIPULATION EXTENDING TIME

09/08/2017    📄
          MOTION

09/07/2017    📄
          CERTIFICATE OF SERVICE

08/10/2017    📄
          MOTION FOR SUMMARY JUDGMENT

8/30/2021

Register of Actions - 2016CV274425

08/10/2017

MEMORANDUM OF LAW

08/09/2017

ENTRY/NOTICE OF APPEARANCE

08/09/2017

CERTIFICATE

07/28/2017

LEAVE OF ABSENCE

05/16/2017

CERTIFICATE OF SERVICE

03/29/2017

PROPOSED ORDER

03/29/2017

PROPOSED ORDER

02/22/2017

DISMISSAL WITHOUT PREJUDICE

02/21/2017

MOTION

02/21/2017

AMENDED COMPLAINT

02/21/2017

PROPOSED ORDER

02/06/2017

ANSWER

01/31/2017

MOTION TO DISMISS

01/13/2017

LEAVE OF ABSENCE

01/10/2017

ANSWER

12/21/2016

RESPONSE TO MOTION

12/19/2016

AMENDMENT

12/19/2016

RESPONSE

12/19/2016

RESPONSE TO MOTION

12/16/2016    ORDER

12/09/2016    MOTION TO DISMISS

11/30/2016    ENTRY/NOTICE OF APPEARANCE

11/23/2016    RESPONSE

11/23/2016    AMENDED ANSWER

11/22/2016    RULE NISI

11/18/2016    MOTION TO DISMISS

11/18/2016    OPPOSITION-OTHER

11/16/2016    CERTIFICATE OF SERVICE

11/15/2016    MOTION

11/15/2016    PROPOSED ORDER

11/09/2016    NOTICE OF SUBSTITUTION OF COUNSEL

10/24/2016    ORDER

10/24/2016    **DISMISSED WITHOUT PREJUDICE**  (Judicial Officer: GOGER, JOHN)
              Party ( Ellis, Painter, Ratterree & Adam LLP )

10/14/2016    STIPULATION EXTENDING TIME

10/07/2016    MOTION

10/07/2016    PROPOSED ORDER

10/04/2016    ORDER

09/29/2016
EXTENSION OF TIME

09/28/2016
MOTION

09/28/2016
PROPOSED ORDER

09/27/2016
ORDER

09/19/2016
NOTICE OF FILING

09/19/2016
NOTICE OF FILING

09/19/2016
OTHER

09/16/2016
VERIFICATION

09/16/2016
VERIFICATION

09/16/2016
VERIFICATION

09/14/2016
STIPULATION EXTENDING TIME

09/07/2016
ENTRY/NOTICE OF APPEARANCE

08/16/2016
NOTICE OF FILING

08/15/2016
ANSWER

08/15/2016
MOTION TO DISMISS

08/15/2016
MEMORANDUM OF LAW

08/15/2016
MOTION TO DISMISS

08/15/2016
ANSWER

08/15/2016
ENTRY/NOTICE OF APPEARANCE

08/09/2016    **DISMISSAL**  (Judicial Officer: GOGER, JOHN)
              Party ( Rubin Lublin, LLC )

08/09/2016    🗎
              ORDER OF DISMISSAL WITHOUT PREJUDICE

07/25/2016    🗎
              ANSWER

07/21/2016    🗎
              ENTRY/NOTICE OF APPEARANCE

07/21/2016    🗎
              STIPULATION EXTENDING TIME

07/19/2016    🗎
              ENTRY/NOTICE OF APPEARANCE

07/19/2016    🗎
              STIPULATION EXTENDING TIME

07/19/2016    🗎
              LEAVE OF ABSENCE

07/06/2016    🗎
              SUMMONS

07/06/2016    🗎
              SUMMONS

07/05/2016    🗎
              STIPULATION EXTENDING TIME

07/01/2016    🗎
              ANSWER

07/01/2016    🗎
              REQUEST TO WITHDRAW

06/23/2016    🗎
              AFFIDAVIT OF SERVICE

06/23/2016    🗎
              AFFIDAVIT OF SERVICE

06/23/2016    🗎
              AFFIDAVIT OF SERVICE

06/23/2016    🗎
              AFFIDAVIT OF SERVICE

06/23/2016    🗎
              AFFIDAVIT OF SERVICE

| 06/17/2016 | REQUEST |
| 06/17/2016 | AFFIDAVIT |
| 06/17/2016 | PROPOSED ORDER |
| 06/17/2016 | CERTIFICATE |
| 06/01/2016 | SUMMONS |
| 05/31/2016 | SUMMONS |
| 05/31/2016 | SUMMONS |
| 05/31/2016 | SUMMONS |
| 05/31/2016 | MOTION TO DISMISS |
| 05/31/2016 | SUMMONS |
| 05/18/2016 | OTHER |
| 04/27/2016 | PLAINTIFF'S ORIGINAL PETITION |
| 04/27/2016 | CASE INITIATION FORM |

## Financial Information

**DEFENDANT**    BAYVIEW FINANCIAL, LP a/k/a BAYVIEW LOAN SERVICING LLC.,

| | |
|---|---|
| Total Financial Assessment | 1.00 |
| Total Payments and Credits | 1.00 |
| **Balance Due as of 8/30/2021** | **0.00** |

**DEFENDANT**    Ditech Financial LLC, F/K/A/ Green Tree Servicing, LLC

| | |
|---|---|
| Total Financial Assessment | 41.00 |
| Total Payments and Credits | 41.00 |
| **Balance Due as of 8/30/2021** | **0.00** |

**DEFENDANT**     McCalla Raymer, LLC

| | |
|---|---:|
| Total Financial Assessment | 1.00 |
| Total Payments and Credits | 1.00 |
| **Balance Due as of 8/30/2021** | **0.00** |

**DEFENDANT**     Specialized Loan Servicing, LLC

| | |
|---|---:|
| Total Financial Assessment | 1.00 |
| Total Payments and Credits | 1.00 |
| **Balance Due as of 8/30/2021** | **0.00** |

**DEFENDANT**     The Bank of New York Mellon FKA The Bank of New York as Trustee

| | |
|---|---:|
| Total Financial Assessment | 1.00 |
| Total Payments and Credits | 1.00 |
| **Balance Due as of 8/30/2021** | **0.00** |

**PLAINTIFF**     Hill, Janet

| | |
|---|---:|
| Total Financial Assessment | 261.00 |
| Total Payments and Credits | 261.00 |
| **Balance Due as of 8/30/2021** | **0.00** |

**PLAINTIFF**     Lindsay-Bailey, Michelle

| | |
|---|---:|
| Total Financial Assessment | 105.00 |
| Total Payments and Credits | 105.00 |
| **Balance Due as of 8/30/2021** | **0.00** |

**PLAINTIFF**     Wilborn, Reginald

| | |
|---|---:|
| Total Financial Assessment | 2.00 |
| Total Payments and Credits | 2.00 |
| **Balance Due as of 8/30/2021** | **0.00** |

Fulton County Superior Court
***EFILED***TMM
Date: 5/18/2016 4:00:22 PM
Cathelene Robinson, Clerk

# SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA
## CIVIL DIVISION

### Case No. 2016-CV-274425.

Janet Hill, Michelle Lindsay Bailey, Reginald Wilborn,
Bilal Rasheed, and Aaron Graves
     Plaintiffs,

v.

Mortgage Electronics Registration System, Inc. A/K/A
MERSCORP, Inc., Bayview Financial, LP A/K/A
Bayview Loan Servicing, LLC, Ditech Financial. LLC F/K/A
Green Tree Servicing, LLC, Specialized Loan Servicing, LLC,
Ellis, Painter, Ratterree & Adam, LLP, MCCALLA RAYMER, LLC
and The Bank of New York Mellon,
As Trustee for purported CWABS, Inc., CWALT, Inc., and
CWHEQ Revolving Home Equity Registered Loan Trusts
    Defendants.

_____/

## FIRST AMENDED VERIFIED COMPLAINT OR JOINT TORT- FEASOR ACTION'S VIOLATIONS UNDER GEORGIA RESIDENTIAL MORTGAGE ACT, CANCELLATION OF DEED AND CONTRACT; VIOLATIONS AGAINST PUBLIC POLICY; SLANDER TITLE; FRAUDULENT CONVEYANCE OF TITLE; AND OTHER COLLECTIVE TORTS

### INTRODUCTION

**1.**

COME now, Janet Hill, Michelle Lindsay Bailey, Reginald Wilborn, Bilal

Rasheed, and Aaron Graves, collectively known as " the Plaintiffs", who brings

their collective allegations and claims for damages against Mortgage Electronics

Registration System, Inc. A/K/A, MERSCORP, Inc. (MERS), Ditech Financial,

LLC, F/K/A Green Tree Servicing, LLC, Specialized Loan Servicing, LLC,

1   Bayview Financial LLC, A/K/A Bayview Loan Servicing, LLC, (collectively

2   referred to as "The Loan Servicers"), Ellis, Painter, Ratteree & Adam, LLP ,

3   MCCALLA RAYMER, LLC( collectively referred to as "The Law Firms") and

4   The Bank of New York Mellon, As Trustee for CWABS, Inc., CWALT, Inc. and

5   other Series Loan Trusts  referred to as  "Real Estate Mortgage Investment

6   Conduit" trusts. Herein, collectively, all are referred to as "Defendants" where the

7   context makes reasonable sense.

8           Plaintiffs are represented by and through undersigned counsel, and

9   conditionally files this as the First Amended Verified Complaint, pursuant to

10   O.C.G.A. §9-11-15 (a). Plaintiffs provides the following:

11                      **JURISDICTION AND VENUE**

12                                    **2.**

13           Jurisdiction is proper in this Court pursuant to significant tort-feasor actions

14   were done in Fulton County, Georgia and throughout the State of Georgia.

15   Additionally, the out of state or foreign Defendants are subject to Georgia's Long

16   Arm Statute under O.C.G.A §9-10-91 for personam jurisdiction purposes.

17           Upon this Court establishing personam jurisdiction and subject matter

18   jurisdiction, all Plaintiffs seek redress by a court of competent jurisdiction.

19                        **STATEMENT OF FACTS**
20                                    **3.**

1    This action is first and foremost brought for claims of violations made under

2  Georgia Banking and Finance laws, Georgia's Corporate Statutes, and   Georgia's

3  Contract torts along with applicable co-existing laws in the State of Maryland.

4  Plaintiffs show that there is prima facie evidence for supporting a pattern of

5  collective tortuous engagements were made  by the named Defendants.  Plaintiffs

6  allege that the Defendants, jointly and severally, engaged in actions to conceal

7  illegal predatory lending origination in contravention to the GRMA and  under

8  applicable state regulated statutes, induced borrowers to sign notes and security

9  deeds or deed of trusts or mortgages, transferred and recorded by fraudulent

10  assumption of authority purported legal titles to assignees or purported

11  beneficiaries, who later on  imposed wrongful billing, servicing and made threats

12  of foreclosure action.  The Plaintiffs allege that there appears to be a well

13  organized effort by the Defendants to benefit from the loans which as an operation

14  of law were inherently illegal and contravened public policies.

15    At all times, Defendants collectively and severally engaged in a scheme to

16  use a non-existent entity, America's Wholesale Lender "AWL", to originate

17  mortgage loans.  Defendants solicited consumers into a false belief that AWL was

18  a bona fide Lender and concealed this scheme for years.

19    However, upon information, due diligence from state agencies records,

20  demonstrate from documents supports that AWL was not at anytime licensed in

1    New York, as a corporation, which was misrepresented on the Notes and

2    Mortgages, in Georgia or Maryland, respectively.

3         During the period from January 2005 through November 2008, AWL held

4    no Certificate of Authority or Certificate of Good Standing from any jurisdiction

5    until December 16, 2008.  At all times, AWL was an unregistered lender, it held no

6    bond as required under the GRMA and in accordance with the Commissioners or

7    by the Board of State Examiners who started the National Mortgage Licensing

8    System, "NMLS".

9         Whereas, Georgia, Maryland and New York participate under the applicable

10   regulatory agency rules of the NMLS, as extension of  their state public policies on

11   mortgage lending and supportive to their monitoring efforts. License and bonds for

12   lenders and servicers are required to participate under the NMLS jurisdiction.

13        As a result of first impressions, each Plaintiff/borrower has suffered from

14   acts in which their real property interests has been marred by the slander of title by

15   falsified instruments, contravention of acts against public policies, malfeasance and

16   where contracts were made by illegal, fraudulent means of inducement and by

17   predatory lending practices.

18        All Defendants are entities who directly engaged to commit fraud by

19   inducing the Plaintiffs into signing their illegal mortgage loan transaction. The

1    third-party Defendants to the loan origination, sought to materially benefit from the

2    fraudulent scheme.

3        The Plaintiffs set forth that the underlying transactions were illegal under

4    Georgia, New York and Maryland business and corporate laws. Each state

5    applicable laws prohibits the transfer of assets by the non-existent entity to be void

6    and invalid. Plaintiffs seek a cancellation of their mortgages, accordingly.

7        Plaintiffs show for good cause that America's Wholesale Lender, "AWL",

8    the purported lender, was a non-existent entity by well supported state agencies

9    records.

10        Prima facie evidence by records support that at no time was AWL a legal

11    entity during the time that it originated loans. See **Exhibit A-** Georgia's Secretary

12    of State Corporation Search for AWL. See **Exhibit B-** New York's Department of

13    Revenue Search for AWL (Did not exist in any capacity until Dec. 16, 2008) and

14    also See **Exhibit C-**Maryland Commissioner of Finance and Insurance Business

15    Search for AWL Trademark Forfeited.

16        AWL intentionally and maliciously misled the Plaintiffs by stating or

17    implying that it was duly licensed in either New York or Georgia or in Maryland.

18        As a direct result of the fraud, each contract facially purports that AWL was

19    organized under the existing laws of New York.  This was not true at any time.

1    Plaintiffs allege that at all times, AWL was unlicensed, unregistered as a

2  lender and thereafter operated to loan without a bond.

3    At all times the actions by AWL and MERS were against public policies on

4  lending practices. Their joint actions were unconscionable and in contravention to

5  state laws which have liabilities under criminal and civil statutes, accordingly.

6    In addition to being required by respective states to have a license to lend,

7  all of the loan servicers, including the purported lender AWL. should have been

8  licensed to operate under and obtain an unique National Mortgage Licensing

9  System ("NMLS") identification number.  AWL never acquired a NMLS

10  identification during the operative years or before December 16, 2008.

11    Whereas, upon belief the Defendant loan servicers conduct their business

12  nationwide with NMLS identifications.

13    As a result, the Servicers are not immune from being licensed, bonded and

14  are required to avoid lending misrepresentations in accordance to the NMLS and

15  state financing laws and requirements.

16    The NMLS is part of a national public policy in which all fifty states adhere

17  to a set of uniform and state specific mortgage lending and servicing laws. The

18  NMLS was created by the Conference of State Bank Supervisors (CSBS) and the

1  American Association of Residential Mortgage Regulators (AARMR)[1].  It is

2  owned and operated by the State Regulatory Registry LLC (SRR)[2], a wholly

3  owned subsidiary of CSBS.

4  **System Goals (NMLS):**

5        The goal of NMLS is to employ the benefits of local, state-based financial

6  services regulation on a nationwide platform that provides for improved

7  coordination and information sharing among regulators, increased efficiencies for

8  industry, and enhanced consumer protection. (See website at:

9  http://mortgage.nationwidelicensingsystem.org/about/pages/nmlsconsumeraccess.a

10  spx ).

11        Upon information and belief, the Defendant Loan Servicers had legal duties

12  to the states in which they operate in to comply with the NMLS rules and

13  regulations by the states, accordingly.  It is strictly prohibited for Loan Servicers to

14  participate in fraudulent undertakings.

15        As a result, collectively, Plaintiffs seek recovery for damages subject to

16  cancellation of the contract, voiding the security interests or to set aside the

---

[1] AARMR is the national organization representing state residential mortgage regulators. AARMR's mission is to promote the exchange of information between and among the executives and employees of the various states who are charged with responsibility for the administration and regulation of residential mortgage lending, servicing and brokering.
[2] State Regulatory Registry LLC (SRR) is a nonprofit subsidiary of the Conference of State Bank Supervisors (CSBS) that operates NMLS on behalf of state financial services regulatory agencies.

1   underlying instruments by this action made against MERS and the third-party

2   beneficiaries, which includes the Loan Servicers, purported Trusts and attorneys

3   that participated in this predatory scheme.

4        At all times, Plaintiffs seek a declaratory judgment on the fact that the

5   contracts were made illegally and made against public policies in contravention

6   statutes under Georgia's O.C.G.A. §13-8-2, O.C.G.A. §14-2-204, and prevailing

7   laws under Maryland Mortgage Lending Law "MMLL" under FI § 11-504 et seq.

8   and FI § 11-505 et seq. , under New York's business laws, and against the NMLS

9   requirements, respectively.

10       Whereas, Plaintiffs, collectively and individually, seek damages, as an

11  operation of the Georgia Residential Mortgage Act "GRMA" O.C.G.A. § 7-1-1000

12  et seq., and under Maryland's "MMLL" FI §§ 11- 504, 505 et seq.. Both state laws,

13  in  Georgia, statute O.C.G.A. § 7-1-1020  and  in Maryland, the MMLL creates a

14  private cause of action against an **unlicensed** person **under** FI § 11-523(b) for

15  any **unlicensed** person, respectively.

16                    **INDISPENSIBLE PARTIES**
17                              4.

18       Plaintiffs were at all times material hereto as residents of Georgia, in either

19  Fulton County, Douglas County, or in Prince George's County Maryland.  The

20  Plaintiffs are current owners of record for their residential real properties identified

21  herein infra.

3.

Defendant The Bank of New York Mellon, N.A. ("BNYM") is and was at all times material hereto as a New York corporation whose principal place of business is in New York City, New York.   On information and belief, BNYM is or was at one time the Trustee for the underlying CWABS, Inc. for Asset-Backed Certificate Series 2005-4, CWABS, Inc.  Asset-Backed Certificate Series 2006-3, CWABS, Inc. Asset-Backed Certificate Series 2007-3, CWALT, Inc., Alternative Loan Trust 2005-58, and CWHEQ, Revolving Home Equity Loan Trust, Series 2005-I, respectively.

The underlying REMIC Trusts purportedly beneficially owns each Plaintiffs' mortgages which were derived from MERS fraudulent assumption of authority in which it transferred all of AWL's questionable assets for benefit of the said named Trusts.

Additionally, BNYM foreclosed on Bilal Rasheed property located at 1885 Lyon Avenue, Atlanta, GA 30311. BYNM caused its participation in the foreclosure sale to be memorialized in Fulton County, Georgia Records and Deeds, dated on Jan. 25, 2012 in Deed Book 50828 Pg: 457.  The Indenture was made on behalf of The Bank of New York Mellon, As Trustee for CWABS, Inc., Asset-Backed Certificate Series 2006-3. The sale occurred after it purportedly received from MERS a Corrective Assignment on or about Sept. 01, 2011.

5.

Defendant Mortgage Electronics Registration Inc. ("MERS") is and was at all times material hereto as a Delaware Corporation, headquartered in Reston, VA. On information and belief, MERS was the Nominee for the purported Lender AWL and Mortgagee of record for all of the loan transactions subject to this action. MERS directed, made record entries or made transfers of each mortgagor's loan to the purported benefit of each respective loan trust or its successors in the counties land records.

6.

Defendant Ditech Financial. LLC F/K/A Green Tree Servicing, LLC, ("Ditech") is and was at all times material hereto a Florida corporation headquartered in Tampa, Florida.  On information and belief, Ditech is the current servicer for Plaintiff Aaron Graves mortgage loan for his property located at 14122 Bishop Claggett Ct., Upper Marlboro, MD 20772.

Also, Ditech is the current servicer for Plaintiff Reginald Wilborn mortgage loan for his property located 4195 Manor Hills Lane, SW, Atlanta, GA 30331.

Purportedly, Ditech services the Plaintiffs mortgages for BYNM  after the underlying mortgagors loans were received from MERS for the benefit of CWABS, Inc., for Asset-Backed Certificate Series 2005-4.

7.

Defendant Bayview Financial, LP A/K/A  Bayview Loan Servicing, LLC, ("Bayview") is and was at all times material hereto a Florida corporation headquartered in  Coral Gables, Florida.  On information and belief, Bayview  is

1   the current Loan Servicer for BYNM on Plaintiff Janet Hill's mortgage loan for

2   her property located at 543 Auburn Avenue, Atlanta, GA 30312.

3         Purportedly, Bayview began servicing Ms. Hill's mortgage after BYNM

4   received the underlying mortgagor loan assets from MERS for the benefit of

5   CWALT, Inc., Alternative Loan Trust 2005-58 and CWHEQ, Revolving Home

6   Equity Loan Trust, Series 2005-I, respectively.

7                     8.

8         Defendant Specialized Loan Servicing, LLC, "SLS" is and was at all times

9   material hereto a Colorado corporation headquartered in Highlands Ranch,

10   Colorado.  On information and belief, SLS is the current servicer of Plaintiff

11   Michelle Lindsay Bailey's mortgage loan for her property located at 4320 Bronte

12   Lane, Douglasville, GA 30135.

13         SLS currently services the mortgagors loan for BNYM on behalf of

14   CWABS, Inc., Asset-Backed Certificate Series 2007-3 after the underlying trust

15   received its purported asset from MERS.

16                     9.

17         Defendant Law Firm of Ellis, Painter Ratteree & Adam, LLP, is a Georgia

18   based firm, herein referred to as the "Law Firms", has failed at its public duty to

19   abate foreclosure actions on behalf of its client BNYM against Mr. Wilborn.

1        It has received notices from Mr. Plaintiff Wilborn, who requested the law

2   firm to conduct an investigation about the status of the underlying loan being

3   predatory, dubious, fraudulent and illegal. It failed, among other things, to avert

4   from exercising a non-judicial foreclosure sale advertisement under the legal

5   doctrine of "strict fairness" compliance in accordance to O.C.G.A. §23-2-114.

6               10.

7        Defendant Law Firm MCCALLA RAYMER, LLC ("McCalla") or

8   referred to as the "Law Firm" is a Georgia based firm that has failed at its public

9   duty to abate foreclosure actions on behalf of its client BNYM.

10        It has participated in processing questionable assignments from AWL to

11   MERS to BYNM by fraudulent assumption of authorities against Plaintiff Ms.

12   Bailey.

13            **FACTUAL BACKGROUND IN DETAILS**
14                   **11.**

15        On or about the following dates below, and during the closing of the loan

16   and thereafter, MERS participation was first-hand in the loan transaction as the

17   Nominee for the purported Lender, AWL.  The information supports by recorded

18   documents, the dates of MERS  participation in a "mortgage loan bargain".

19   Plaintiffs alleges that the applicable banking laws were contravened due to the fact

20   that AWL was unlicensed as a Lender and non-existent entity:

21        **MERS DIRECT LOAN CLOSING INVOLVEMENT**

22   **Date of Closings**    **Borrower Name**    **MERS Capacity In Loan Transaction**

| | | |
|---|---|---|
| April 06, 2005 | Reginald Wilborn | Nominee of Lender and Grantee |
| April 22, 2005 | Aaron Graves | By Assignment Deed of Trust Post Closing |
| Oct, 06, 2005 | Janet Hill | Nominee of Lender and Grantee |
| Feb 15. 2006 | Bilal Rasheed | Nominee of Lender and Grantee |
| Jan. 26, 2007 | Michelle L. Bailey | Nominee of Lender and Grantee |

Unbeknownst to the Plaintiffs, MERS assumed agency for "AWL", an unlicensed and non-existent entity, in the purported loan transaction. MERS took the mortgagee/grantee position on behalf of an alleged MERS member for purposes of securing the Lender by the Security Deed/Deed of Trust (mortgage). See Instruments referenced below:

### AWL's Recorded on Notes & Deed of Trust/ Security Deed.

| 1st and 2nd Liens | Borrower Name | MERS Capacity In Loan Transaction |
|---|---|---|
| 1st Lien | Reginald Wilborn | Nominee of Lender and Grantee |
| 1st Lien | Aaron Graves | By Assignment Assignee |
| 1st Lien & 2nd Lien | Janet Hill | Nominee of Lender and Grantee |
| 1st Lien | Bilal Rasheed | Nominee of Lender and Grantee |
| 1st Lien | Michelle L. Bailey | Nominee of Lender and Grantee |

After the closings, MERS continued to perpetuate by its fraudulent assumption of authority by directing the recordations of the above instruments through the Law Firms and Title companies which were later transferred directly to The Bank of New York Mellon ("BNYM"), as Trustee. for the various trusts, supra. See **Exhibit D- List of Assignments**.

1    MERS knew or should have known that the loan transactions were illegal,

2    unconscionable and subject to being void for the following reasons:

3        At no times was AWL a legal corporate entity.

4        At no times was AWL a member of MERS membership.

5        At no times was AWL a licensed lender in any jurisdiction.

6        In Georgia, the banking and finance laws under the Georgia Residential

7    Mortgage Act and in Maryland, under the MMLL required AWL to meet the

8    minimum requirements of being duly licensed. AWL was not licensed and held no

9    certificate of authority to operate or conduct lending under the various state's

10   jurisdiction.

11       Further, MERS corporate covenants prohibit it or its members from

12   engaging in fraudulent lending acts in accordance to its own covenant **under**

13   **Section 5. Termination of Membership.**

14       Under Georgia corporate law O.C.G.A. §14-2-204, the liability for the action

15   of using an non-existent entity or a non-corporation, holds the agent liable. The

16   statute provides:

17       "All persons purporting to act as or on behalf of a corporation,
18       knowing there was no incorporation under this chapter, are jointly and
19       severally liable for all liabilities created while so acting. " See *Weir v.*
20       *KIRBY CONSTR. CO. INC*., 446 SE 2d 186, Ga. App. (1994) holding,
21       "the court charged the jury: "If Paul J. Weir, at the time of the signing
22       of the contract ... knew *or should have known* that Patti Arbuckles
23       Productions, Inc. was not incorporated then he is personally liable to
24       [Kirby] for any sums remaining due under the contract." (Emphasis
25       supplied.)

1    Under Maryland's MMLL provides:

2    **"Under** FI § 11-523(b), any unlicensed person
3    who is not exempt from licensing under this subtitle who makes or
4    assists a borrower in obtaining a mortgage loan in violation of this
5    subtitle <u>may collect only the principal amount of the loan</u> and may not
6    collect any interest, costs, finders fees, broker fees, or other charges
7    with respect to the loan."
8
9    In surprise to each borrower, MERS intentionally engaged in the loan

10   transaction and thereafter directed to record and memorialize in the various land

11   records of Georgia Counties and in Prince George's County, Maryland the falsified

12   mortgages.

13   Dubious or questionable assignment instruments were later recorded

14   indicating that MERS purportedly served as the nominee/ agent for AWL.

15   MERS knowingly made or should have known that its transfers and

16   conveyances were by fraudulent assumptions to BNYM, as trustee, for the various

17   loan trust.  See **Exhibit D- Lists of Assignments**.

18   In many cases, after the first recording of the security instruments, MERS

19   revisited the transaction with full knowledge and sought to correct the instruments.

20   However, MERS never sought to cancel the transfers of any assignment or

21   the lien deeds, themselves.

22   MERS chose to purposefully file and record Corrective Assignments. See

23   **Exhibit D- List of Assignments.**

1   As a result, the Plaintiffs allege that at all times, MERS acted with intent

2   and malicious contempt against the consumers' real property interests and land title

3   rights.

4   Further, at all times, MERS acted in contravention to its own corporate

5   covenants under MERS System of Membership Section 5 (a), controlling state

6   laws and the NMLS, contemporaneously.

7   Under MERS System of Membership Section 5 (a),  in  relevant parts of the

8   covenant under MERS  "Governing Document", expressly prohibits and implies an

9   incumbent legal duty for it to safeguard or terminate a Member engaged in

10  fraudulent or misrepresentations with respect to mortgages.  MERS verbatim

11  instructions and duties are found in the covenant below:

12  **Section 5. Termination of Membership**.  (Found on pages 4-5)

13  MERSCORP Holdings may terminate a Member's membership…….
14  if MERSCORP Holdings reasonably determines that any of the
15  following apply to such organization:

16  (a) MERSCORP Holdings has reasonable grounds to believe that the
17  Member, or any principal associated with the Member, has been or is
18  responsible for (i) fraud, fraudulent acts or breach of fiduciary duty,
19  (ii) making a misstatement of a material fact or omitting to state a
20  material fact to MERSCORP Holdings in connection with its
21  application to become a Member, or (iii) the material violation of any
22  statutes, rules and regulations applicable to the Member that is
23  relevant to the provision of services of the MERS® System or the
24  MERS Entities,…."

1    Upon information and belief found in the above, MERS acted illegally under

2    prevailing statutes and outside of its own corporate covenants. At all times, MERS

3    purported or implied in the Security Deed the following:

4       A. That AWL was an entity and a MERS member in accordance with

5          MERS® System Rules of Membership.

6       B. MERS was a separate company and nominee/agent for the Lender, AWL.

7       C. MERS treated AWL as a MERS members when it was not;

8       D. AWL could not lend in Georgia or Maryland or New York without being

9          duly licensed, registered and bonded. It was not.

10      E. In support, Plaintiff points to the underlying state records. See **Exhibit**

11         **A-Georgia Secretary of State Corporate Business Search, Exhibit B-**

12         **New York Department of Business Search and Exhibit C-Maryland**

13         **Business Search**.

14      F. AWL never sought to correct its status as a lender or to amend or repair

15         the deeds impaired by the torts of misrepresentation.

16      G. AWL was not at any time a federal bank, a federal savings bank, a

17         federal credit union, or licensed in the federal jurisdiction. Wherefore,

18         upon information and belief, AWL had no exemptions, so it was legally

19         required to be licensed and registered to lend in accordance with state

20         laws.

21      H. AWL was not licensed nor formulated in New York as misrepresented on

22         the mortgages.

23   Upon information and belief in the above, AWL was at all times a non-

24   existent entity and unlicensed, in which it cannot be prosecuted under Georgia,

Maryland or New York Laws.   It has no registered agent for purposes of summons and service. It is not a party of interests for this action.

Wherefore, MERS and others are held liable by the Plaintiffs for lending torts and fraudulent transfers of purported mortgages, accordance with the states' laws.

All Plaintiffs seek collective and individual damages, accordingly.

## FIRST CAUSE OF ACTION AND COUNT I: FRAUDULENT LOAN ORIGINATION BY NON-EXISTANT ENTITY, VIOLATIONS BY UNLICENSED LENDER NON-COMPLIANCE UNDER THE BANKING AND OTHER CORPORATE STATUTES

### 12.

This action is brought, among other things for a cancellation of the mortgage and other related instruments. In Georgia, the preconditions for a deed cancellation in accordance to precedent laws held by Georgia's Supreme Court in *Czyz v. Czyz*, 242 SE 2d 585,  Ga. (1978). Georgia Supreme Court provided;

"A court of equity cannot decree the cancellation of a deed unless the parties to the deed, or their representatives, are made parties to the action." *Jackson v. Watts,* 223 Ga. 70 (154 SE2d 195) (1967). See also *Emhart Corp. v. McLarty,* 226 Ga. 621 (176 SE2d 698) (1970). In addition, see *Sowell v. Sowell,* 92 SE 2d 524,  Ga. Supreme Court (1956)" "The conflicts seem to result, in many instances, from the failure to distinguish between a proper party, on the one hand, and a necessary or indispensable party, on the other. A proper party is one without whom a substantial decree might yet be made, but which decree would not settle all questions involved in the controversy. A necessary or indispensable party is one essential to give the court jurisdiction of the cause. See *Rice* v. *Tarver,* 4 *Ga.* 571, 586; *Railroad Commission of Ga.* v.*Palmer Hardware Co.,* 124 *Ga.* 633, 637 (53 S. E. 193).

1    As a result, Plaintiffs allege fraud, *ab initio*, and for the indispensable parties
2    who engaged in fraudulent inducement or sought a pecuniary interest to benefit
3    from the malfeasance, as defined under the GMRA and the MMLL statutes. In
4    support of their claims, Plaintiffs give this Court judicial notice on the following
5    legal terms applicable for the proceedings herein:
6        Whereas, in Black's Law Dictionary 6th Edition defines **Public Policy**
7    **Doctrine** as follows:

8    9    "Doctrine whereby a court may refuse to enforce contracts that violate
10   law or public policy."

11       Also, in Black's Law Dictionary 6th Edition defines **Entity** as follows:
12   13   "A real being; existence. An organization or being that possesses
     separate existence for tax purposes."
14       Additionally, in Black's Law Dictionary 6th Edition defines, in relevant
15   parts, **Nominee,** as follows:

16   17   "One who has been nominated or proposed for an office. One
18   designated to act for another in his or her place. ... It is used
19   sometimes to signify an agent or trustee."
20       Lastly, Black's defines "legal duty" as "[a] duty arising by contract or by
21   operation of law." Black's Law Dictionary (9th ed. 2009); see also *Reid v. Saul,*
22   *146 Ga.App. 264, 246 S.E.2d 121 (1978)* (same).

23       Plaintiffs allege that collectively, Defendants had legal duties to investigate,
24   when given due notices, that their loan was done in contravention to lending

1  standards and regulations. Defendants, particularly the Loan Servicers, Law Firms

2  and BNYM failed to use candor and investigate the charges of predatory lending.

3       Plaintiffs allege that they were fraudulently induced under the GRMA or

4  under the MMLL by the following reasons:

5       a.  At all times, Plaintiffs were reliant on the GRMA or the MMLL to

6           protect them from lending frauds by unlicensed and unregistered

7           entities.

8       b.  Plaintiffs were reliant on the closing, where the purported lender

9           had attorneys or title companies to witness the transaction, to

10          verify that a bona fide lender had interests in the loan, including

11          the status of AWL offered a valid contract by an approved lender.

12      c.  Among other things, MERS lent its name in the transaction as a

13          bona fide party with its own particular corporate of interests.

14      d.  Plaintiffs were reliant at all times on good faith and fair dealings as

15          required under the GRMA and by contract statutes.

16      e.   Plaintiffs were reliant on the fact that from their previous personal

17          experiences, that the closing appeared normal and similar to what

18          occurred during other closings.

19      f.  Plaintiffs were reliant that affidavits and notaries were binding on

20          all parties and that their oaths were truthful and legitimate in

21          support of a legitimate loan transaction was bargained under

22          Georgia's or Maryland's or by implying New York's laws.

23      g.  The fact that multiple consumers have experienced the same set of

24          torts that begins with AWL to MERS and then ends with BNYM,

shows intent and a pattern of practice to misrepresent consumers which was somewhat widespread and contemplated.

Collectively, the factual evidence by supports that AWL and MERS failed to operate in good faith and fair dealings under GMRA, MMLL and under other Georgia and Maryland's contract statutes.

## SECOND CAUSE OF ACTION AND COUNT II: MISREPRESENTATIONS AND MISCHIEF UNDER BANKING LAWS VOIDS THE CONTRACT MORTGAGORS ARE NOT LIABLE FOR THE DEBT
### 13.

Plaintiffs incorporate the definitions below and further allege their rights for redress against the Defendants for their collective non-compliances with public policies.

The GMRA and the MMLL affirmatively deals with torts made during origination of a loan and thereafter.

The effects of inducing to sign security deeds for the benefit of an unlicensed lender, to transfer that assets, to service that asset, bad faith in contract breaches, and the affect upon land rights for which Plaintiffs seek recovery, upon belief are incorporated under the statutes or business practices, accordingly.

Collectively and severally, Plaintiffs have been harmed by the joint tort-feasors being MERS, BNYM and the third-party Loan Servicers and Law Firms who engaged in contravention of state laws and under the NMLS rules,

1   accordingly. See ***Roylston v. Bank of America, NA***, 660 SE 2d 412, Ga. App.

2   (2008). [2] [Emphasis added].

3       The Plaintiffs enumerates alleged violations in contravention to applicable

4   GRMA, MMLL and Maryland Consumer Protection Act codes but, not limited to

5   the following counts:

6   i.      Failure by AWL and MERS to be duly licensed and registered were in

7         contravention to O.C.G.A. § 1000 (15) 'Registrant' means any person

8         required to register pursuant to Code Sections 7-1-1001 and 7-1-1003.2.[3]

9         In Maryland, see ***Citaramanis v. Hallowell***, 613 A. 2d 964, Md, Court of

10       Appeals (1992) holding:

11        '<u>A consumer who has been subjected to an unfair or deceptive trade practice</u>
12        <u>may elect to utilize either the public or private enforcement proceedings</u>
13        <u>available under the CPA or may utilize both public and private enforcement</u>
14        <u>proceedings, either simultaneously or in the alternative</u>. The CitaraManises
15        chose not to file a complaint with the Division and avail themselves of any
16        of the CPA's public enforcement remedies; instead, they brought a private
17        action pursuant to § 13-408(a)."

18
19   ii.    Misrepresentations were jointly made by AWL and MERS implying that

20         AWL was at all times a bona fide Lender in contravention to O.C.G.A. §

21         application for a mortgage loan or a mortgagor;"

---

[2] Citing OCGA § 7-1-103(6) was enacted as part of the GRMA to regulate the licensing of mortgage lenders and brokers. See Ga. L. 1993, p. 543, § 1 and shows private right of action under the GMRA.

[3] Under Maryland Consumer Protection Act "CPA" § 13-408(a), courts have well established restitution as part of the damages for Consumers involving deceptive business practices torts by unlicensed entities.

iii.    Induced Plaintiffs to sign a Security Deeds or Deed of Trust without meeting the GRMA licensing requirements in contravention to O.C.G.A. § 7-1-1013 (8):

" Induce, require, or otherwise permit the applicant for a mortgage loan or mortgagor to sign a security deed, note, loan application, …;"

iv.    Induced Plaintiffs to be serviced and to make payments under the false terms in contravention to § 7-1- 1000 (17):

'Service a mortgage loan' means the collection or remittance for another or the right to collect or remit for another of payments of principal, interest, trust items such as insurance and taxes, and any other payments pursuant to a mortgage loan."

v.    Failure to provide a bond for the guaranty against malfeasance in contravention to O.C.G.A. § §7-1-1003.2;

"Any person including the department who may be damaged by noncompliance of a licensee with any condition of a bond or this article, the 'Georgia Residential Mortgage Act,' may proceed on such bond against the principal or surety thereon, or both, to recover damages." See *Hartford Fire Ins. v. iFreedom Direct Corp.*, 718 SE 2d 103, Ga. App. (2011). [Emphasis].

vi.    Filing or cause to file a falsified Security Deed in Gwinnett County, Georgia in contravention to O.C.G.A. §16-8-102 (5) provides:

"16-8-102. Offense of residential mortgage fraud
A person commits the offense of residential mortgage fraud when, with the intent to defraud, such person:

(5) Files or causes to be filed with the official registrar of deeds of any county of this state any document such person knows to contain a deliberate misstatement, misrepresentation, or omission."

vii.    Upon information and belief, AWL was not a federal bank, savings bank or under a federal charter. Wherefore, AWL had no exemptions from being licensed, registered, and bonded in contravention to Georgia Residential Mortgage Act of 2006, O.C.G.A. § 7-1- 1000 (15).

viii.    MERS is sought to be held liable for its actions to represent the unlicensed corporation as the principal lender in accordance to Georgia's Corporation Statute OCGA § 14-2- 204, respectively.

ix.    Further, Plaintiffs allege that the transaction breached all terms under said agreement and was not done by fair dealings in contravention to the OCGA §7-1-1013(6):

"Engage in any transaction, practice, or course of business which is not in good faith or fair dealing, or which operates a fraud upon any person, in connection with the attempted or actual making of, purchase of, transfer of, or sale of any mortgage loan;

x.    AWL and MERS engaged in fraudulent underwriting practices in contravention to O.C.G.A. §7-1-1013 (7):

" Engage in any fraudulent home mortgage underwriting practices"

In accordance with the above legal requirements and definitions under the GMRA, Plaintiffs further allege that neither AWL nor MERS were licensed to lend, registered to act as a lender and thereafter, involve loan servicers to continue false billings.

At all times, AWL provided no prerequisite bond to secure them in the case of fault in procuring a loan transaction.

As a result of AWL's and MERS non-compliances under the GMRA,

1   Plaintiffs allege that they were induced by their collective frauds and by joint

2   misrepresentations in the loan transaction. Wherefore, Plaintiffs seeks to prosecute

3   MERS and other agents. Plaintiffs seek recovery under the GRMA and punitive

4   damages, accordingly.

**THIRD CAUSE OF ACTION AND COUNT III:**
**MERS LIABILITIES UNDER O.C.G.A. §14-2-204**
**14.**

Plaintiffs incorporates the Sections 11, 12 and 13 above, and further allege the

following:

Under Georgia's public policies for business corporations and entities that

deals with a non-existent corporation, the applicable law is under O.C.G.A. § 14-2-

204, (formerly enacted under § 14-2-23). The law is precise and Plaintiffs

questions if MERS derived any rights or entitlements from the loan to transfer its

interests.   The Georgia's corporation statute provides:

> "All persons purporting to act as or on behalf of a corporation, <u>knowing</u>
> <u>there was no incorporation under this chapter, are jointly and severally liable</u>
> <u>for all liabilities created while so acting</u>." [Emphasis supplied].

Plaintiffs allege the jointly MERS, the Loan Servicers, the Law Firms, and

BNYM, in its capacity as trustee, knew or should have known that AWL was non-

1  existent and unlicensed under the GRMA, MMLL and the NMLS. Whereas, at all

2  times the loans were made without AWL complying with corporate license and

3  registration.

4      Specifically, the Loan Servicers and BNYM sought to benefit from the

5  dubious transactions. Plaintiffs allege and seek for this Court to apply the meaning

6  of  "all persons", to mean in the instant case, namely MERS, the Loan Servicers

7  and BNYM and their attorneys.

8      Each Defendant herein,  is involved in some capacity of the mortgage

9  industry. If true, then the Plaintiffs begs the question about Defendants legal duties

10  toward ascertaining the veracity of the loan made by AWL.

11      Additionally, MERS knew or should have known that AWL was not one of

12  its member.  MERS had no authority to act as a nominee in accordance with its

13  own covenants found in its Governing Documents and under its Rules.

14  Specifically, MERS' RULE 1: OBLIGATIONS OF MERS ENTITIES Section 5,

15  of its covenants.

16      With respect to MERS involvement in the underlying loans, Plaintiffs allege

17  that MERS had a legal duty to investigate the standing of AWL, a non-member,

18  before it engaged to act as its nominee. However, MERS failed to comply with its

19  own covenants and failed to comply under the state's banking statutes.

1    After the purported closing of the underlying loans, subsequently between

2    2009 and in 2014, MERS made Corrective Assignment entries and failed at its

3    legal duties to investigate AWL's status and standing as one of its member.

4    MERS chose to execute or "Correct" on behalf of AWL's purported assets

5    that were transferred to BNYM.

6    The several entries were intentionally recorded for those instruments, in the

7    Counties land records, to appear valid under the 'color of law' and to impair the

8    Plaintiffs' titles. The documents when viewed from the requirement of lending

9    practices, were overt engagements of falsification of liens and instruments by

10   claiming legal titles from authorities that purportedly came from AWL through

11   MERS.

12   Plaintiffs re-allege that the titles transferred were done by fraudulent

13   assumptions of authorities.

14   As a result, Plaintiffs allege that the purported asset of MERS were mere

15   nullities that concealed facts to the borrowers and to the public.  MERS actions are

16   alleged to have been affirmative acts to slander the Plaintiffs' titles and to trespass

17   upon their properties, as an operation of law. All along, the actions were

18   unconscionable and done by bad morals.

19   In Georgia, controlling laws on the corporate statutes affirmatively hold that;

20   " Prior to incorporation the entity "`could do no corporate act, could
21   receive no corporate property, could incur no corporate liability, and

against it no corporate judgment could be legally rendered.' Held in *Jamal v. Hussein*, 515 SE 2d 407   Ga. App. (1999) " [Emphasis supplied].

Also see, in *Don Swann Sales Corp. v. Echols*, 287 SE 2d 577, Ga, Court of Appeals( 1981) held:

> "The question we are asked to decide here is whether an *individual* purporting to act for a non-existent corporation can escape liability on a contract by defending on the basis of the non-existent corporation. We do not think that the doctrine of corporation by estoppel should be applied under these circumstances."

Essentially, *Jamal v. Hussein and Don Swann Sales Corp. v. Echol* are controlling laws for prosecution purposes of Defendants in accordance to dealings with an non-existent and unlicensed entity, accordingly.

The opinion held in *Culverhouse v. ATL. Assn. For Aged Persons*, 194 SE 2d 299, Ga. App. (1972) summarizes where the lender's misrepresentation torts should not be rewarded:

> "It is uniformly held in this State, and elsewhere, that "where the license required by the statute is not imposed only for revenue purposes, but requires registration or licensing primarily for the purpose of protecting the **public** from acts mala in se, or detrimental to good morals, or from improper, incompetent, or irresponsible persons, as in the case of unregistered or unlicensed druggists or physicians, their imposition amounts to a positive prohibition of a contract made without a compliance with and in violation of the statute, and by implication renders such a contract void and unenforceable." *McLamb v. Phillips,* 34 Ga. App. 210 (129 SE 570) (citation omitted). [**Emphasis added**].

1  Wherefore, Plaintiffs allege that they were falsely induced to sign loan

2  documents, procured by fraudulent underwriting procedures, and thereafter had

3  false and misrepresented liens slander their titles.

4  Plaintiffs seek recovery and entitlement under the applicable GRMA,

5  MMLL, CPA and under the corporate statute, accordingly.

6  **FOURTH CAUSE OF ACTION AND COUNT IV:**
7  **DECLARATORY JUDGMENT ON FRAUDULENT TRANSFER OF**
8  **ASSETS OF A NON-EXISTENT CORPORATION IS VOID OR IN THE**
9  **ALTERNATIVE, AS A MATTER OF LAW**
10  **15.**
11  Plaintiffs re-allege the facts above in Section 14 to be applicable for

12  asserting claims that the fraudulent transfer of purported assets that never belonged

13  to AWL as a nullity:

14  Plaintiffs seek redress under Georgia, Maryland and New York laws which

15  holds the Defendants liable for their joint actions and engagements in contract and

16  lien torts.  In accordance to OCGA §14-2-204, Georgia's High Courts have

17  affirmatively held:

18  "In a situation where the existence of the corporate entity is questioned, the
19  controlling factor in determining whether the estoppel doctrine applies is
20  whether the entity on whose behalf the person entering into the contract
21  purported to act had been issued a certificate of incorporation before the
22  contract was executed. If not, then the contracting agent will be held
23  personally liable for the obligations of the purported corporation thus
24  incurred. See former code OCGA § 14-2-23 [presently OCGA §14-2-204] ;
25  See _Don Swann Sales Corp. v. Echols,_ 160 Ga. App. 539 (287 SE2d
26  577) (1981); and also see, _Echols v. Vienna Sausage Mfg. Co.,_ 162 Ga. App.
27  158 (2) (290 SE2d 484) (1982).

1    Specifically, the Plaintiffs seek to hold MERS liable, as the contracting

2  agent, involvement for the loan transactions fin the predatory loan scheme.

3    Additionally, Plaintiffs seeks to void, cancel and set aside those instruments

4  that MERS co-authored that were by-products of predatory lending fraud.

5    Whereas, this Court is empowered to void and cancel the contracts due to

6  violations of public policies.  Well settled precedent rulings in Georgia Courts have

7  held in *Legend, Inc. v. Norwest Bank*, 560 SE 2d 120  Ga. App  (2002), that;

8        "One cannot transfer or convey an interest in real property greater
9        than [she] has."

10    Whereas, Plaintiffs are reliant on this Court to apply *Legend, Inc. v. Norwest*

11  *Bank,* as a controlling law, herein.

12    Additionally, the Plaintiffs gives judicial notice that New York's laws

13  support, as a practical matter, where MERS cannot convey or transfer any interest

14  in the property, such as the Security Deed, in which a non-existent New York

15  entity participated in a fraudulent action prior to being licensed and registered in

16  accordance with New York business corporation laws.

17    Whereas, AWL held itself to have been formulated under New York's

18  jurisdiction. However, at all times, state records support that AWL was an

19  unlicensed and non-existent entity and not a corporation as purported.

1    Even so, the applicable New York statute weighs in against AWL under

2    N.Y. Bus. Corp. §203 (a). Whereas, in New York, an unlicensed and registered

3    entity, are subject to certain limited exceptions,

4        "no act of a capacity or power to do such act or to make or receive such
5        transfer as a corporation and no transfer of real or personal property to or by
6        a corporation, otherwise lawful, shall be invalid by reason of the fact that the
7        corporation was without capacity or authority to act. [Emphasis Added].
8        See *PORT VIL. HOA INC. v. SUMMIT ASSOC.*, 2010 NY Slip."
9

10    In Maryland, the Appellate Courts have adopted a uniform acceptance of

11    convincing opinions that certain contract torts are void and unenforceable. See

12    below:

13        "In *Thorpe v. Carte*, 252 Md. 523, 529, 250 A.2d 618 (1969), the
14        Court quoted with approval two passages from the then-
15        current *Restatement of Contracts* announcing that "[a]ny bargain is
16        illegal if either the formation or the performance thereof is prohibited
17        by constitution or statute" and that "[g]enerally a party to an illegal
18        bargain cannot recover either damages for its breach or, after
19        rescission, the performance he has rendered or its value." Similar
20        language, expressing a broad doctrine of unenforceability, appears in
21        several earlier and later Maryland cases. See, for example, *Goldsmith
22        v. Mfgrs' Liability I. Co.,* 132 Md. 283, 286, 103 A. 627 (1918): "It is
23        settled that where the contract which the plaintiff seeks to enforce is
24        expressly or by implication forbidden by the statute, no Court will
25        lend its assistance to give it effect"; *Van Meter v. Wilkinson,* 187 Md.
26        492, 498, 50 A.2d 557 (1947); *Queen v. Agger,* 287 Md. 342, 346,
27        412 A.2d 733 (1980): "Contracts which violate statutes will not be
28        enforced"; *McGinley v. Massey,* 71 Md. App. 352, 525 A.2d 1076
29        (1987) ."
30

In summary, under applicable state laws holds that a non-existent and unlicensed entity had no title or rights to transfer its purported asset in its name. If a transfer occurs, then the presumption is by fraudulent assumption of authority, then the Court should find that there exists no force and effect given to an illegal and unconscionable transaction without legal authority.

Plaintiffs seek an affirmative determination that MERS transferred its purported interests in Security Deed by assignments to BNYM were acquired by AWL's fraud.

Collectively, Plaintiffs seek a determination that the assignments are subject to being void in accordance to controlling laws which holds opinions like in *Legend, Inc.*, supra and *Copelin,* below to be applicable and controlling law:

> "When a person without lawful authority sells and conveys as his own real property belonging to another person and receives the consideration paid, "such pretended sale and conveyance will not operate to divest the title of the owner nor will the purchaser derive any title." *Copelin,* supra at 692, 111 S.E. 186."

## FIFTH CAUSE OF ACTION AND COUNT V:
## REQUEST TO VOID MORTGAGE CONTRACT AND OTHER
## INSTRUMENTS FOR VIOLATION OF PUBLIC POLICIES

### 16.

Plaintiffs reallege from the above Section 11, 13 and 14 to support land torts under Georgia law and their right for redress. Plaintiffs redress are sought as follows:

Plaintiffs seek the cancellation and voiding the Security Deeds and MERS' assignments in accordance with Georgia's law under OCGA §13-8-2. Plaintiffs seeks an equitable consideration by the Court on this matter.

The relevant applicable parts of the code provides:

"§13-8-2. (a) A contract which is against the policy of the law cannot be enforced. Contracts deemed contrary to public policy include but are not limited to:........ (b) A covenant, promise, agreement, or understanding in or in connection with or collateral to a contract ..... ily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee is against public policy and is void and unenforceable.."

Whereas, as found in *Porubiansky v. Emory University*, 275 SE 2d 163, Ga. App. (1980), the precedent ruling holds for the discretion by the trial court for determining voidness:

"'It is well settled that contracts will not be avoided by the courts as against public policy, except "where the case is free from doubt and where an injury to the public interest clearly appears."'" *Cash v. Street & Trail,* 136 Ga. App. 462, 465 (221 SE2d 640) (1975). Unless prohibited by statute or public policy, the parties are free to contract on any terms and about any subject matter in which they have an interest, and any impairment of that right must be specifically expressed or necessarily implied by the legislature in a statutory prohibition and not left to speculation. *Brown v. Five Points Parking Ctr.,* 121 Ga. App. 819, 821 (175 SE2d 901) (1970). A contract cannot be said to be contrary to public policy unless the General Assembly has declared it to be so, or unless the consideration of the contract is contrary to good morals and contrary to law, or unless the contract is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law. *Camp v. Aetna Ins. Co.,* 170 Ga. 46, 50 (152 SE 41) (1929); *Brown v. Five Points Parking Ctr.,* supra, at p. 821.

Furthermore, Plaintiffs seek a cancellation of the deed along with the assignments. The two transactions were made arising from the same illegal transactions in contravention to the public policies under the GRMA, Georgia's Corporate laws, MMLL and CPA.

Additionally, Plaintiffs seek to enjoin the Loan Servicers, the Law Firms and BNYM, as trustee, for REMIC trusts from attempting to enforce the fraudulent instruments for all purposes to bill, collect, publish and threaten to foreclose on the subject properties, herein.

## SIXTH CAUSE OF ACTION AND COUNT VI:
## SLANDER OF TITLE
### 17.

Plaintiffs references all actions relevant in the preceding sections 11, 12 and 13, 14 and 15 above where, AWL and MERS violated public policies under the banking laws and induced the Plaintiffs to sign their Security Deeds or security Instruments.

Plaintiffs further allege that the fraudulent lending misrepresentations led to the falsification and recording of a lien and other assignment instruments that were directly traceable to the non-existent entity.

Plaintiffs allege that by the collective actions of lending torts and recordation of false instruments were used to mislead by publication and to impair real properties ownership.

In support of his claims for slander of title, Plaintiffs is reliant on O.C.G.A. § 51-9-11 which provides:

> "The owner of property may bring an action for "libelous or slanderous words which falsely or maliciously impugn his **title** if any damage accrues to him therefrom."

Affirmatively, the Plaintiffs allege that their title interests have been damaged by Defendants. Plaintiffs seek a disgorgement of records to give an account for a sum total of damages and to ascertain an exact amount of his damages sustained.

In general, Plaintiffs have collectively sustained losses associated from the ongoing collection activities against their property.  Provided below is a preliminary accounting on an average for assuming damages but, not limited to a final accounting for recovery on the following damages:

### Related Damages Caused by Slander of Title

| | |
|---|---|
| A. Illnesses , Doctor visits and therapies | $  4,500.00 |
| B. Attorney and legal fees | $ 45,000.00 |
| C.  Research and paralegal fees | $  5.000.00 |
| D.  Loss of credit rating and access to credit due to unfair credit reporting  supplied by the Loan Servicer | $ 75,000.00 |
| E.  postage and copying expenses | $  1,500.00 |
| F.  Travel expenses | $  4.500.00 |
| G.  Pain, harassment and anguish | $ 25,000.00 |
| H. Payments made against contract | $ 60,000.00 |

**Total Damages to date:**                     **$230,500.00**

In addition, the Plaintiffs aver redress under Georgia's land torts laws pursuit to O.C.G.A. §51-9-4 for ongoing trespassing. Action for trespass by person having title is held under the statute which provides as follows:

"To constitute the tort of invasion of privacy by publicity which places one in a false light in the public eye, there must be established as one of the elements of the tort, that the publicity was false; to wit, it depicts the Plaintiffs as something or someone which he is not. [Cit.]" *Brown v. Capricorn Records,* 136 Ga. App. 818, 819 (1) (222 SE2d 618) (1975).

Wherefore, Plaintiffs seeks damages of information supplied by the Loan Servicers to the Credit Reporting Agencies as a tort under Georgia's law to be included under "invasion of privacy by publicity which placed him in a false light in the public eye."

Affirmatively, Plaintiffs seek punitive damages to be awarded by a jury trial on all related matters as an operation of law.

"'Punitive damages can be awarded upon the same basis as in other torts, where a wrongful motive or state of mind appears, but not in cases where the defendant has acted innocently, as for example in the belief that the Plaintiffs has given his consent.'" Prosser, Law of Torts (3d Ed.), p. 844; *Cabanis v. Hipsley,* 114 Ga. App. 367, 383, Ga. App. (1966) Used as standard review. Also supported damages for Public disclosure of embarrassing private facts about the Plaintiffs.

## SEVENTH CAUSE OF ACTION AND COUNT VII:
## BYNM'S STANDING TO ACT ON BEHALF OF A TERMINATED OR COLLAPSE TRUST
### 18.

Plaintiffs allege that the CWABS, Inc. and CWALT, Inc, and other loan trusts represented by BNYM with respect to the Plaintiffs and purported assignments infer, that the purported principals or Creditors for this action, were at one time structured as Real Estate Mortgage Investment Conduit ("REMIC")

1    trusts. The underlying trusts are an indispensible parties for purposes this action

2    and for claims under Slander of Title.

3         Plaintiffs puts forth evidence by records researched and allege that all of the

4    alleged Trust have stopped reporting to the Security and Exchange Commission

5    ("S.E.C.") and have filed notices accordingly in the S.E.C. records. Thus, the

6    meaning of cancellation of reporting, among other things implies that the trusts

7    might either be collapsed trusts, liquidated or terminated  as Real Estate Mortgage

8    Investment Conduit under the IRS Code.  See 26 C.F. R. § 1.860F-1 Qualified

9    liquidations.

10        Plaintiffs allege without active reporting through the SEC, only proof of

11   active existence is through required annual tax records.

12        The governing lawfor the trusts are under New York's jurisdiction.

13   However, research in  NY Department of Business Entities under the Secretary of

14   State shows no registration exists in New York. The Assignments  made in the

15   counties shows various different addresses for the trusts, without any reference to a

16   registration or certificate of authority by any states.  In many cases, the addresses

17   were linked to the Loan Servicers business address.

18         These fact causes Plaintiffs to question if the Trusts are  present-day active.

19   If not, then the underlying trusts' Prospectus and Pooling and Servicing Agreement

20   would be non-operational.

1        More importantly, it begs the question if the underlying trusts purportedly

2  represented by BNYM are either non-existent or the trusts have undergone a

3  termination or liquidation in accordance with the Internal Revenue Code.

4  Whereas, summons and service have only been directed to their purported trustee

5  and no summons or service can be made to the real legal entity.

6        A search of tax records are pending to show findings if any recent activities

7  of  existing tax reports for the underlying REMICs. The REMICs are required to

8  maintain a separate employer tax identification and file yearly taxes pursuant to 26

9  CFR § 1.860F-4 REMIC reporting requirements and other administrative rules.

10  However, the tax code does not provide any private right of action.

11        The larger question is relevant to the "Status and Standing " as an alleged

12  Creditor which pursues an alleged legal title interest in the Plaintiffs' properties.

13        Equally applicable for consideration in this action, that all attempts by

14  Plaintiffs to give notices under the contract terms to BYNM, as trustee, and to the

15  Loan Servicers along with the Law Firms, the Defendants failed to address or

16  provide substantiation about an active existence of said trust either by an

17  applicable address, telephone number or where the REMIC retains registered

18  agents.

1    Currently, BYNM purports to be acting in the capacity as trustee, in which

2    the Plaintiffs allege that the respective trusts are arguably defunct, collapsed or

3    terminated as an entity.

4    Wherefore, Plaintiffs seeks a determination pursuit to his right to know the

5    Real Parties of Interests, herein in accordance with O.C.G.A. 9-11- 17 (a).

6    Additionally, the Plaintiffs allege that Georgia Constitution Bill of Rights

7    provides that it is the paramount duty of the government to protect person property

8    rights from intruders.

9    Plaintiffs seek discovery and declaratory judgment on this matter, for the

10    REMIC's to prove standing and status, in accordance to the civil practice code.

11

12

13    **EIGHTH CAUSE OF ACTION AND COUNT VIII:**
14    **BREACH OF CONTRACT AND WRONGFUL FORECLOSURE**
15    **19.**
16    Plaintiffs allege that MERS, BYNM, Loan Servicers along with Law Firms

17    breached their contract and engaged in unjust accelerations under the purported

18    invalid contracts in accordance to the applicable GRMA or under the MMLL and

19    CPA.  Plaintiffs set forth their reasons to wit:

20    a.  Plaintiffs contract were breached, *ab initio*, because it was made by a

21    non-existent entity which did not conform to any lending practices.

b. Plaintiffs sent several notices throughout 2014 through 2016 requesting an investigation on the legal status purportedly held by AWL's successors-in-interests and third-parties under the mortgagor rights contained in the Security Instruments Sections 15 and 18, respectively. The notices sought clarification on the loan status and the right to enforce due to contraventions made to lending and licensing requirements.

c. However, BYNM never responded as required.

d. However, the Loan Servicers along with Law Firms made misrepresentations asserting that the loans were valid and proceeded with foreclosure notices and publications.

e. Plaintiffs allege that in addition to violations under the applicable banking and finance laws, the contract terms were breached per Covenant Sections 15 and 18 of the Security Deeds, respectively. The Respondents did not use candor with any purported investigation on their part.

f. Inclusive to applicable banking and finance laws that were not complied, strict fairness under the mortgage contract terms were breached by premature acceleration of indebtedness without resolving the standing of parties rights to enforce the contract for seizure.

g. Plaintiffs allege that the Defendants could have demonstrated fairness by seeking a declaratory judgment in a competent court as required or implied under Section 22 (d) the Security Instrument.

h. Additionally, prior to litigation, Defendants could have demonstrated a good faith effort to resolve the surrounding issues. Defendants could have offered a significant and meaningful settlement opportunities to the mortgagors, but no attempts were offered for purposes of reconciliation.

1    Wherefore, in summary of the above, Plaintiffs seek to recovery under terms

2  of their contract and claims of wrongful foreclosure for the premature acceleration.

3    **NINTH CAUSE OF ACTION AND COUNT IX:**
4  **BREACH OF CONVENANTS FOR GOOD FAITH AND FAIR DEALINGS**
5    **20.**
6
7    Plaintiffs re-allege above Section 18 and further allege that

8  collectively and individually, Defendants breached good faith and fair

9  dealings. Plaintiffs seek to recover from the torts, accordingly.

10    Plaintiffs allege that under the GMRA §7-1-1013 (6) provides for fair

11  dealings under the loan origination.  MERS is cited for breaching the

12  applicable statute fair dealings requirements, *ab initio*, by its dealings with

13  the unlicensed and non-existent entity on the mortgage loans.

14    In Georgia and in Maryland, upon information and belief, every

15  contract is governed by the doctrine of good faith and fair dealings.

16    Whereas, throughout 2015 and 2016, the Loan Servicers, BYNM and

17  Law Firms sought to accelerate the indebtedness by non-judicial

18  foreclosures in Georgia  in contravention to Section 18 and 22 of the

19  Security Deed. The acceleration actions were not done in strict fairness due

20  to the fraudulent contract and conveyances were made under the 'color' of

21  law.

22    Plaintiffs provide their reasons to wit:

1    Defendants are collectively and individually alleged to be liable for

2    violations under applicable banking and finance laws.  Violations under the

3    lending laws  includes inducing the Plaintiffs to sign secured interests over

4    to a non-existent entity, who had no license or business location in the

5    respective state and thereafter had parties to service the loan as a valid

6    undertaking. Plaintiffs allege that the transaction was illegal, invalid and

7    unconscionable.

8    Defendants are unfairly engaged in their own torts to benefit from the

9    fraud scheme which includes the fact that the Loan Servicers have received

10   advanced payments prior to the discovery of the fraud and prior to their

11   efforts to enforce and accelerate a purported indebtedness.

12   Wherefore, Defendants, being the Loan Servicers along with Law

13   Firms and BYNM are alleged to be liable for violations of good faith and

14   fair dealings in their attempt to proceed on enforcing questionable contracts.

15   As a result, Plaintiffs have received threats of credit damages,

16   foreclosure enforcement and unfavorable loan modifications offers which

17   have caused pain, anguish, duress, emotional suffering and the lack of

18   peaceful enjoyment of the Plaintiffs' homes.

19   Accordingly, Plaintiffs seek recovery for the bad faith and failure of

20   legal duties relevant to applicable statutes and under the contract covenants.

## RELIEF SOUGHT
### 21.

Plaintiffs seek the following redress and awards from damages for the causes of action enumerated above on all Nine Counts, respectively:

1. Declaratory Judgment on voiding the Mortgage Contract and voiding assignment instruments conveyed by MERS  in accordance to OCGA §13-8-2 for violations of public policies under the applicable banking laws, corporate laws and under CPA, so that,  the good interest of public policy and the interest in justice should prevail.

2. Declaratory Judgment on the status and standing of the underlying trusts to be "real parties of interests" with active ongoing registration and license under a state jurisdiction and under proof by IRS reports.

3. Declaratory Judgment that AWL scheme was a scheme or that gross negligence occurred in using a non-existent and unlicensed entity.

4. Favorable Judgment for the Plaintiffs on GRMA and MLL torts where Plaintiffs  have a right to recovery for payments made in violations to the applicable  lending laws.  Plaintiffs seeks to hold MERS liable for  the value of the contract by its role in the predatory lending scheme.  Also, Plaintiffs seeks damages for falsely inducing a Security interests and falsely transferring title interests to BYNM, as trustee to be determined at trial.

5. Favorable Judgment for the Plaintiffs as a matter of law, that OCGA §14-2-204 holds MERS and all other Defendants jointly and severally liable because AWL was at all times a non-existent entity with no rights to receive or pass title to any person, thereafter. That the deed is unenforceable and unconscionable and liable to Defendants, accordingly.

6. Favorable Judgment for the Plaintiffs that may fully recoup damages for the unconscionable slander of title that was directed by MERS. And that the deeds impaired the Plaintiffs' title and should be removed.

7. Favorable Judgment for the Plaintiffs that their Contract was breached by MERS, *ab initio* and later on, the Loan Servicers along with Law Firms and BYNM were contributory in breaching covenants under the express terms as they sought to benefit under the false instruments.

8. Favorable Judgment for the Plaintiffs that is entitled to recover for breach of good faith and fair dealings against all Defendants by a jury decree and damages to be determined at trial.

9. Favorable Judgment for the Plaintiffs that the Loan Servicers along with LAW FIRMS, particularly applicable to Defendant Ellis, Painter, Ratteree & Adam, LLP and BYNM are debt collectors and they are jointly liable for deceptive practices.

10. Favorable Judgment for the Plaintiffs to reverse foreclosures deeds and to award for damages where threats were made or carried out to completion.

11. Favorable Judgment for the Plaintiffs that the Loan Servicers liable for any false and misleading information supplied to the Credit Reporting Agencies that put the Plaintiffs in "bad public light" under the slander of title claim.

12. Favorable Judgment for the Plaintiffs are entitled to punitive damages by jury instruction and award.

13. Favorable Judgment for the Plaintiffs that neither BYNM, as trustee for the various loan trusts nor the Loan Servicers along with Law Firms have no "Standing" to proceed against the subject properties for any amount of indebtedness or for any enforcement purposes and the Defendants are collectively and permanently enjoined from doing so. That this Court retains jurisdiction over the matters for enforcement purposes, accordingly.

14. Favorable Judgment that the Defendants are jointly and severally liable for Plaintiffs attorney fees discovery, court costs and fees for quiet title action to remove instruments, accordingly.

15. Favor Judgment in which this court deems appropriate and just on matters for punitive damages and other matters not expressly requested but, consistent with the facts, herein.

16. Plaintiffs reserve the right to add or mis-joined any parties by notice to the court or by leave of the Court.

Plaintiffs sayeth naught more.

This _____th day of May, 2016.

/s/ Greg Bailey

Greg Bailey

Georgia Bar No.032075

Email:

Address:

 Douglasville, Georgia 30135

(404) 790-6427 (P)

(404) 393-7528 (F)

*Attorney for Plaintiffs*

1
2
3
4
5
6

*Affidavits for Verified Complaint*

*(for Each Plaintiff)*

*Purposefully Left Blank*

Fulton County Superior Court
***EFILED***AC
Date: 6/20/2018 3:14 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| Janet Hill, Michelle Lindsay Bailey, Reginald Wilborn, Bilal Rasheed, and Aaron Graves, )<br><br>    Plaintiffs, )<br><br>v. )<br><br>Mortgage Electronic Registration System, Inc. A/K/A MERSCORP, Inc., Bayview Financial, LP A/K/A Bayview Loan Servicing, LLC, Ditech Financial LLC F/K/A Green Tree Servicing, LLC Specialized Loan Servicing, LLC, Ellis, Painter, Ratterree & Adam, LLP, MCCALLA RAYMER, LCC, and The Bank of New York Mellon, as Trustee for Purported CWABS, Inc., CWALT, Inc., and CWHEQ Revolving Home Equity Registered Loan Trusts, )<br><br>    Defendants. ) | CIVIL ACTION FILE<br>NO. 2016CV274425 |

## **VOLUNTARY DISMISSAL WITHOUT PREJUDICE**

COMES NOW Plaintiff Debbie G. Heaton ("Plaintiff") and, pursuant to O.C.G.A. § 9-11-41, files this voluntary dismissal without prejudice of all claims contained in the above-referenced action.

This 19th day of June, 2018.

/s/  Grady A. Roberts
Grady A. Roberts
Georgia Bar No. 609540
Attorney for Plaintiff

**ROBERTS LAW, LLC**
4470 Satellite Boulevard
Suite 101
Duluth, GA 30096
(404) 794-7000

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

Janet Hill, Michelle Lindsay Bailey, Reginald )
Wilborn, Bilal Rasheed, and Aaron Graves, )
                               )
      Plaintiffs, )     CIVIL ACTION FILE
                               )     NO. 2016CV274425
v. )
                               )
Mortgage Electronic Registration System, Inc. )
A/K/A MERSCORP, Inc., Bayview Financial, LP )
A/K/A Bayview Loan Servicing, LLC, Ditech )
Financial LLC F/K/A Green Tree Servicing, LLC )
Specialized Loan Servicing, LLC, Ellis, Painter, )
Ratterree & Adam, LLP, MCCALLA RAYMER, )
LCC, and The Bank of New York Mellon, as )
Trustee for Purported CWABS, Inc., CWALT, Inc., )
and CWHEQ Revolving Home Equity Registered )
Loan Trusts, )
                               )
      Defendants. )
                               )

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2017, I electronically filed the foregoing *Voluntary Dismissal Without Prejudice* with the Clerk of the Court using the eFileGA/Odyssey System which will electronically deliver a copy to counsel of record

                                              */s/  Grady A. Roberts*_____
                                              Grady A. Roberts
                                              Georgia Bar No. 609540
                                              Attorney for Plaintiff