**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **JANET HILL,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**COMMUNITY LOAN SERVICING f/k/a BAYVIEW LOAN SERVICING and SHELLPOINT MORTGAGE SERVICING,**<br><br>**Defendants.** | **CIVIL ACTION NO.**<br>**1:21-CV-3750-WMR-CCB** |

**FINAL REPORT AND RECOMMENDATION**

This matter is before the Court for consideration of *pro se* Plaintiff Janet Hill's initial motion to remand, (Doc. 17), Plaintiff's amended motion to remand, (Doc. 24), and Defendants' motion to dismiss, (Doc. 5). For the reasons set forth below, the undersigned **RECOMMENDS** that Plaintiff's initial motion to remand, (Doc. 17), be **DENIED AS MOOT**, that Plaintiff's amended motion to remand, (Doc. 24), be **DENIED**, and that Defendants' motion to dismiss, (Doc. 5), be **GRANTED**.

## I. BACKGROUND

On August 2, 2021, Plaintiff filed her petition to quiet title and for declaratory judgment (the complaint) in Fulton County Superior Court, against

Defendants Community Loan Servicing f/k/a Bayview Loan Servicing (Bayview)[1] and Shellpoint Mortgage Servicing (Shellpoint). (Doc. 1-1). In the complaint, Plaintiff asserts that she is the owner of real property located at 543 Auburn Avenue, Atlanta, GA 30312, and that there exists an "alleged security deed" to that land that was executed in October of 2005. *Id.* at ¶¶ 3, 7. She asserts that the equity of redemption expired and no person with right, title, or interest tendered or paid the monetary amount provided for redemption under Georgia law. *Id.* at ¶ 11. She states that all actions to properly foreclose the property by any parties having an interest therein have been fully completed and that she, therefore, "holds Fee Simple absolute legal and equitable title to the Subject Property, the land and free from any claim of right, title or interest in any party, whether known or unknown." *Id.* at ¶ 12. Plaintiff also alleges that the security deed relating to her property operates as a cloud on her title to the land that may be "vexatiously or injuriously used against [her]" and that her credit is impaired and the land value destroyed. *Id.* at ¶¶ 17–18.

[1] Consistent with Defendants' notice of removal and response in opposition to Plaintiff's amended motion to remand, the Court refers to this Defendant as "Bayview" rather than "Community." (*See generally* Docs. 1 and 25).

On September 10, 2021, Defendants removed the case to this Court. (Doc. 1). On September 17, 2021, Defendant Bayview filed a motion to stay pretrial deadlines and discovery, (Doc. 4), and a motion to dismiss, (Doc. 5). On the same day, Defendant Shellpoint filed a motion for joinder to the motion to dismiss. (Doc. 7). On October 7, 2021, the Court issued an order granting the motion to stay and the motion for joinder. (Doc. 10). Plaintiff filed a response in opposition to the motion to dismiss, (Doc. 9), and Defendants filed a reply, (Doc. 11).

Plaintiff subsequently filed multiple motions on her own, while still being represented by counsel. (*See* Docs. 12 (motion for extension of time to respond to notice of removal), 15 (motion for adequate time to amend responses due to ineffective counsel), 17 (motion to remand)). The Court denied the two motions for time to respond or amend responses because Plaintiff was still represented by counsel. (Docs. 13, 16). However, on November 22, 2021, Plaintiff filed motions to withdraw her two attorneys, (Docs. 18, 19), which the Court granted. (Doc. 21). Plaintiff notified the Court of her intention to proceed *pro se* on December 20 and 21, 2021, (Docs. 22, 23), and on December 27, 2021, she filed an amended motion to remand, (Doc. 24). Defendants filed a response in opposition to the amended motion to remand. (Doc. 25). Plaintiff then filed two supplements to the amended motion to remand, (Docs. 27, 29), to which Defendants responded, (Docs. 28, 31).

On March 25, 2022, Plaintiff filed an "Emergency Motion for Restraining Order," (Doc. 30), which the Court declined to take up, (Doc. 32). Plaintiff then filed a "Supplement Emergency Motion for Restraining Order" on April 1, 2022. (Doc. 33). The District Judge declined to enter such order without notice to Defendants, noting that the Court would schedule a hearing at a future date to address the issue of whether Plaintiff is entitled to any injunctive relief. (Doc. 37). Defendants filed a response in opposition to both motions for restraining orders. (Doc. 38).

## II. MOTIONS TO REMAND

### A. Initial Motion to Remand

On November 15, 2021, Plaintiff filed a *pro se* motion to remand, despite still being represented by counsel. (Doc. 17). Plaintiff filed motions to withdraw counsel on November 22, 2021, (Docs. 18, 19), which were both granted on November 30, 2021, (Doc. 21). Plaintiff then notified the Court of her intention to proceed *pro se*, (Docs. 22, 23), and she subsequently filed her amended motion to remand to State Court, (Doc. 24). Plaintiff's properly filed amended motion, therefore, takes the place of her initial motion, and the initial motion to remand, (Doc. 17), should be **DENIED AS MOOT**. *See* LR 83.1(D)(2), NDGa (providing that a party may not normally appear on her own while represented by counsel).

**B. Amended Motion to Remand**

Defendants' notice of removal asserts that this Court has diversity jurisdiction. (Doc. 1 at 3–6). Plaintiff argues that the case should be remanded because there is not complete diversity and the amount in controversy does not exceed $75,000. (Doc. 24 at 2–4; Doc. 27 at 2–3).

An action originally brought in state court may be removed to federal court when the action satisfies the constitutional and statutory requirements for original federal jurisdiction. *See* 28 U.S.C. § 1441; *Heath v. ILG Techs., LLC*, No. 1:20-CV-3130-TWT, ---F. Supp. 3d.----, 2020 WL 6889164, at *2 (N.D. Ga. Nov. 24, 2020). "A removing defendant bears the burden of proving proper federal jurisdiction." *Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 972 (11th Cir. 2002). When a court evaluates the facts of a case giving rise to removal jurisdiction, it strictly construes the right to remove and applies "a general presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) (internal quotation marks omitted).

Federal courts have jurisdiction over an action where there is complete diversity between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. In determining whether there is complete diversity and the

requisite amount in controversy, the Court assesses those "jurisdictional facts at the time of removal." *Scimone*, 720 F.3d at 882; *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 n.13 (11th Cir. 1994) ("Jurisdictional facts are assessed on the basis of plaintiff's complaint *as of the time of removal*.").

### *1. Complete Diversity*

Plaintiff argues that there is not complete diversity in this case because Defendants both have registered agents in the State of Georgia who voluntarily accepted service in the State of Georgia. (Doc. 24 at 3–4; *see also* Doc. 27 at 2). Defendants contend that complete diversity exists, that this is an undisputed fact, and that the notice of removal establishes complete diversity. (Doc. 25 at 6).

For a federal court to have diversity jurisdiction, there must be complete diversity, meaning that "the citizenship of every plaintiff must be diverse from the citizenship of every defendant." *Legg v. Wyeth,* 428 F.3d 1317, 1320 n.2 (11th Cir. 2005). As the removing party, Defendants have the burden of proving by a preponderance of the evidence the two requirements for diversity jurisdiction: complete diversity of citizenship and that the amount in controversy is greater than $75,000. *Gomez v. Am. Sec. Ins. Co.*, No. 8:13-cv-2988-T-30AEP, 2014 WL 805927, at *2 (M.D. Fla. Feb. 28, 2014); *see also McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) ("Further, the party invoking the court's jurisdiction bears the

burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction.”).

An individual is a citizen of the state in which he is domiciled. *See McCormick*, 293 F.3d at 1257. “A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom.” *Id.* at 1257–58 (internal quotation marks and alteration omitted). A corporation is a citizen of every state by which it is incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c)(1). And a limited liability company (LLC) “is a citizen of any state of which a member of the company is a citizen.” *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). For diversity purposes, “jurisdictional facts are evaluated as they stand at the time of removal.” *Dudley v. Eli Lilly and Co.*, 778 F.3d 909, 913 (11th Cir. 2014). Further, the party that “remov[es] a case to federal court based on diversity of citizenship bears the burden of establishing the citizenship of the parties.” *Rolling Greens MHP, L.P.*, 374 F.3d at 1022.

Here, the parties do not dispute that Plaintiff is a citizen of Georgia. They do, however, dispute the citizenship of both Defendants.[2] In the notice of removal, Defendants assert that Defendant Bayview is a Delaware LLC wholly owned by its sole member, Bayview Asset Management, LLC—a Delaware LLC with only one member that is also a Delaware LLC, Bayview Asset Management Holdings, LLC. (Doc. 1 at 3). Bayview Asset Management Holdings, LLC has two members: Mayim Capital, LLC—whose sole member is an individual who is a citizen of Florida—and Mayim Investment Holdings, Inc.—which is incorporated and has its principal place of business in Florida. *Id.* Thus, Defendants maintain in their notice of removal that Bayview is a citizen of Delaware and Florida. *Id.* at 4. Defendants next assert that Defendant Shellpoint is a Delaware LLC whose sole member is Shellpoint Partners LLC. *Id.* Shellpoint Partners LLC's members are

[2] In their response brief, Defendants state that "Plaintiff does not dispute that complete diversity exists among the parties to this case." (Doc. 25 at 6). However, it appears from Plaintiff's amended motion to remand and her first supplement that this is not the case. (*See* Doc. 24 at 3–4 (asserting that "Defendants['] claim for diversity does not apply" because of the fact that Defendants are registered to conduct business in Georgia, they have registered agents in Georgia, and the registered agents voluntarily accepted service in Georgia under Georgia law); Doc. 27 at 2 (asserting that Defendants' diversity is "compromised" by the fact that they both qualify to conduct business and are currently conducting business in Georgia)). The Court, therefore, assesses whether complete diversity exists.

NRM Acquisition LLC and NRM Acquisition LLC II, and the sole member of both of those LLC's is New Residential Mortgage LLC, whose sole member is New Residential Investment Corporation. *Id.* And New Residential Investment Corporation is a citizen of Delaware and New York because it is "organized under the laws of the State of Delaware"—meaning it is incorporated in Delaware—and has its principal place of business in New York. *Id.* Defendants, therefore, maintain that Defendant Shellpoint is a citizen of Delaware and New York. *Id.*

Plaintiff contends that diversity does not exist because "Defendants are both registered to conduct primary and normal business in the state of Georgia with Registered Agents located [in Georgia]" who "voluntarily accepted service in the State of Georgia, under state laws of Georgia." (Doc. 24 at 3–4). Plaintiff's argument is meritless, however, because "[h]aving a registered agent in Georgia does not confer citizenship." *Henry v. Nationstar Mortg., LLC*, No. 1:13-CV-2339-MHS, 2013 WL 12380979, at *4 (N.D. Ga. Dec. 3, 2013); *see also Williams v. Wells Fargo Bank N.A.*, No. 1:12-CV-1466-TWT, 2012 WL 2119203, at *2 n.7 (N.D. Ga. May 15, 2012) ("[T]he location of Wells Fargo's registered agent is not relevant to Wells Fargo's citizenship."), *adopted by* 2012 WL 2119153 (N.D. Ga. Jun. 8, 2012); *Island Pipeline, LLC v. Sequoyah Ltd., LLC*, No. 3:08-CV-1133-J-32HTS, 2009 WL 413584, at *4 n.6 (M.D. Fla. Feb. 18, 2009) ("[T]he citizenship of an LLC's registered agent is

not relevant in determining the citizenship of an LLC."). Defendants adequately allege their citizenships in the notice of removal and, despite not addressing the issue further in their response to Plaintiff's amended motion to remand, they have established complete diversity. *See Rolling Greens MHP, L.P.*, 374 F.3d at 1022 ("To sufficiently allege the citizenships of . . . unincorporated business entities, a party must list the citizenships of all the members of the [LLC] . . . .").

**2. *Amount in Controversy***

Plaintiff next argues that the amount in controversy threshold is not met because it does not exceed $75,000. Rather, she maintains, there are only "hypothetical," "assumed," "exaggerated," and "*potential* damages over $75,000." (Doc. 24 at 2, 3). In response, Defendants argue that Plaintiff's complaint makes clear that the amount in controversy, more likely than not, exceeds $75,000. (Doc. 25 at 2, 6–10).

When jurisdiction is premised upon diversity of citizenship, 28 U.S.C. § 1332(a) requires that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." "A defendant seeking to remove a case to federal court must file a notice of removal that includes a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 925 (11th Cir. 2019) (internal quotation marks

omitted). "If a plaintiff makes an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (internal quotation marks and alteration omitted). "When the plaintiff contests or the court questions the defendant's allegation, the defendant must prove by a preponderance of the evidence that the amount in controversy is sufficient." *Anderson*, 943 F.3d at 925. "In some cases, this burden requires the removing defendant to provide additional evidence demonstrating that removal is proper." *Roe*, 613 F.3d at 1061. "In other cases, however, it may be facially apparent from the pleading itself that the amount in controversy exceeds the jurisdictional minimum, even when the complaint does not claim a specific amount of damages." *Id.* (internal quotation marks omitted).

"To determine whether the defendant has carried its burden, a court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence." *Anderson*, 943 F.3d at 925; *see also Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1208 (11th Cir. 2007) (holding that "in the removal context where damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the

evidence"). In making this determination, the court may rely on its "judicial experience and common sense." *Roe*, 613 F.3d at 1064. "A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Anderson*, 943 F.3d at 925 (internal quotation marks omitted).

The Court begins its analysis by considering whether it is apparent from the face of the complaint that the amount-in-controversy requirement has been met. The proper pleading at issue is the original complaint (Plaintiff's petition for quiet title and declaratory judgment) that was filed prior to removal. (Doc. 1-1 at 6). It includes the following demands in the prayer for relief:

> (d) For a Finding and Declaratory Judgment that sales, transfers, assignments of any interest to the Subject Property be terminated, and extinguished; (e) [f]or a finding that Petitioner is the valid holder of Fee Simple Title in the Subject Property . . . ; (f) [a] jury trial[;] (g) [t]hat an appropriate determination of quiet title be issued and recorded in the office of the Clerk of the Superior Court of Fulton County, Georgia, which decree holds that Fee Simple title to the Subject Property has and is vested in [Plaintiff], free and clear of any claim of right, title or interest by any other Respondent, or any other party, known or unknown; and (h) [f]or damages and such other and further relief as the court may deem just and equitable.

*Id.* at 8–9. The complaint also states that "[t]here appears of record in the office of the Clerk of the Superior court, Fulton County, Georgia, a certain alleged security deed to [the subject property], purporting to have been executed for an alleged

note for $464,000.00 . . . ." *Id.* at 6. In the notice of removal, Defendants assert that "the [c]omplaint seeks an order rendering the $464,000.00 security instrument null and void," and that this meets the amount in controversy. (Doc. 1 at 5). Defendants further maintain that the property to which Plaintiff seeks to quiet title "has a valuation of $627,900.00 per the Board of Tax Assessors for Fulton County, Georgia," and it, therefore, also satisfies the amount in controversy. *Id.* at 5–6.

It appears from the complaint that Plaintiff is seeking an order rendering the $464,000.00 security deed null and void. (Doc. 1-1 at 8 ("[Plaintiff] is entitled . . . to a determination and a declaratory finding . . . that all claims by persons known and unknown shall be extinguished, that the Subject Property and land shall be free and clear of all claims . . . .")). And other judges on this court have held that "[d]iversity jurisdiction, in a case seeking recission, may be based on the original loan amount . . . because the [p]laintiff denies that [s]he owes to the [d]efendant the amount evidenced by the loan." *Sanders v. Bank of Am., N.A.*, No. 1:13-cv-01904-WSD, 2013 WL 6587742, at *4 (N.D. Ga. Dec. 16, 2013).[3] This holding is not

[3] The Court in *Sanders* distinguished cases in which a plaintiff seeks to invalidate a loan agreement (where the loan amount in a security deed is relevant to the amount in controversy) from those in which a plaintiff is seeking to enjoin or set aside a foreclosure (where the amount in controversy is measured by the undisputed fair market value of the property and not the original loan amount listed on a security deed). 2013 WL 6587742, at *3–4.

universal, however, and other judges have looked instead to the value of the property itself at the time of removal. *See Thomas v. Northstar Mortg. Grp., LLC*, No. 1:13-cv-1038-WSD, 2013 WL 5636692, at * 2 (N.D. Ga. Oct. 16, 2013) ("In actions seeking declaratory or injunctive relief, it is well-established that the amount in controversy is measured by the value of the object of the litigation." (internal brackets and quotation marks omitted)); *see also Tr. v. Midland Mortg. A Div. of MidFirst Bank*, No. 1:16-CV-00699-RWS-JCF, 2016 WL 10998851, at * 6 (N.D. Ga. Nov. 21, 2016) (explaining that, where the plaintiff sought to quiet title and sought to cancel and remove any documents in the county records to assert any trust or ownership interest in the subject property, "the value of the object of the litigation [was] the value of the property at issue"), *adopted by*, *sub nom*. *Kity Land Tr. v. Midland Mortg.*, 2017 WL 8221391 (N.D. Ga. Jan. 9, 2017).

Here, the Fulton County Board of Assessors determined that the total value of the property was $627,900.00 in 2020. (Doc. 1-3 at 2); *see Baker v. Select Portfolio Servicing, Inc.*, No. 1:12-cv-03493-JEC, 2013 WL 4806907, at *4 n.5 (N.D. Ga. Sept. 9, 2013) (holding that the amount in controversy was satisfied where the county tax assessment showed that the property in question was assessed to be valued at $277,400 for the year that the complaint was filed). And, as noted above, the amount of the security deed is $464,000. Therefore, the Court need not determine

which approach is correct, because the amount in controversy is satisfied by both the value of the security deed and the value of the property itself.

Plaintiff asserts in the complaint that the value of the subject land has been destroyed "[b]y reason of any deed, liens, and/or other encumbrances upon the records of Fulton County." (Doc. 1-1 at 8). The complaint was filed in Fulton County Superior Court on August 2, 2021. (Doc. 1-1 at 6). Therefore, it is possible that the value of the property could have decreased between the time the property value was assessed in 2020 and the time Plaintiff filed her complaint in 2021. However, Plaintiff does not allege any specific amount representing the value of the property, nor does she allege any possible measure of loss such that the Court could logically infer what damages Plaintiff may seek for the alleged decrease in value. *Cf. Irving v. Bank of Am.*, No. 1:11-CV-752-AT, 2012 WL 12965628, at *2 (N.D. Ga. Jan. 10, 2012) (finding that the total award the plaintiff sought (compensatory and punitive damages) would more likely than not exceed $75,000 where the complaint alleged that the property value decreased from $132,000 to $49,000, "raising a logical inference that [the plaintiff] would seek compensatory damages of $83,000"; where the plaintiff claimed in his motion to remand that the measure of compensatory damages was his lost equity and the interest he paid on the loan; and where the plaintiff's own calculations of compensatory damages was

$51,844.26). Compensatory damages related to the value of the subject property are, therefore, too speculative for the Court to determine how much they contribute to the total amount in controversy. And because the assessed value in the year prior to removal exceeds the amount in controversy by over $500,000, Defendants have met their burden to show by a preponderance of the evidence that this Court has subject matter jurisdiction, and Plaintiff's amended motion to remand should, therefore, be **DENIED**.

### C. Supplements to Amended Motion to Remand

Plaintiff filed supplemental briefs regarding her amended motion to remand. (Docs. 27, 29). Defendants filed responses to both supplements. (Docs. 28, 31). Plaintiff asserts in her first supplement to the motion to remand that Defendants do not have standing to remove this case to federal court because they have no ownership interest in the subject property and have not presented any proof that they do. (Doc. 27 at 1–2). Plaintiff cites to *Lujan v. Defenders of Wildlife* in asserting that Defendants bear the burden of establishing that they have a legally protected interest and are entitled to judicial resolution by a court. 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing [the elements of standing]."). There are three elements that must be established for Article III standing: (1) "the plaintiff must have suffered an injury

in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of . . ."; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61.

Plaintiff seems to conflate multiple issues: that of Article III standing, that of removal jurisdiction, and that of whether Defendants have an interest in the subject property—the issue that Plaintiff is attempting to litigate by bringing this case. And although the question of whether Defendants have an interest in the subject property is a core issue in this matter, it is not one that impacts their ability to remove the case to federal court. While Plaintiff correctly observes that Defendants, by removing this case, invoked federal jurisdiction, the context here simply does not warrant the standing analysis from *Lujan*—which addresses whether a *plaintiff* has standing to bring an action. Rather, for a defendant to remove a case from state to federal court, the defendant must establish that the federal court has subject matter jurisdiction. 28 U.S.C. § 1441. And as explained above, Defendants adequately established subject matter jurisdiction through

their notice of removal and response to the amended motion to remand. (*See* Docs. 1, 24, 25).

Plaintiff filed a second supplement in which she asserts that Defendants conceded that they lacked standing through their silence as to the issue of standing. (Doc. 29 at 2). However, having already determined that the issue of standing is not relevant for purposes of a motion to remand, the Court declines to consider the second supplement further.

## III. MOTION TO DISMISS

Defendants filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 5). In their motion to dismiss, Defendants first argue that Plaintiff's claims are barred by the doctrines of *res judicata* and collateral estoppel, citing to multiple actions filed by Plaintiff in this court and others since 2011. (Doc. 5-1 at 1–9, 11–15). They also argue that Plaintiff fails to state any claim for relief, relies on legal conclusions, and fails to identify specific facts to support each claim or identify which claim pertains to which Defendant. *Id.* at 15–16. However, Defendants argue that to the extent there are any cognizable claims for declaratory relief, quiet title, or redemption, those claims fail. *Id.* at 16–24.

Plaintiff filed a response in which she argues that *res judicata* and collateral estoppel do not apply to bar her claims. (Doc. 9 at 3–4). She argues that she is

entitled to a declaratory judgment based on the uncertainty and insecurity she suffers with regard to her property. *Id.* at 4. She maintains that she should prevail on her quiet title claim because Defendants' interests in the property have statutorily expired, and that she should be entitled to redemption. *Id.*

Defendants filed a reply, arguing in further detail that Plaintiff's claims should be barred by *res judicata* and providing a summary of Plaintiff's previous actions. (Doc. 11 at 2–8). Defendants also reassert the additional arguments they made in their motion to dismiss and argue that Plaintiff should not be permitted to amend her complaint. *Id.* at 8–10.

**A. Standard on a Motion to Dismiss**

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a plaintiff need not include "detailed factual allegations" in the complaint, the requirement to demonstrate the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, to survive a motion to dismiss, a complaint "must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

These standards suggest a two-pronged approach for courts evaluating a motion to dismiss a complaint. *See id.* at 678–79; *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). First, "eliminate any allegations in the complaint that are merely legal conclusions." *Am. Dental Ass'n*, 605 F.3d at 1290. While a court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011), it need not consider "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678. Nor should it consider "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Second, "where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Am. Dental Ass'n*, 605 F.3d at 1290 (internal quotation marks omitted).

**B. Discussion**

Defendants argue that Plaintiff's claims are barred by the doctrine of *res judicata*. (Doc. 5-1 at 11–12). Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits of an action by a court of competent jurisdiction bars a subsequent claim by the same parties, or those in privity with the parties, to relitigate the same claims. *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1356 (11th Cir. 1998); *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986). Federal courts apply the law of the state in which they sit when determining whether claims are barred by *res judicata*. *Starship Enters. of Atlanta, Inc. v. Coweta Cnty.*, 708 F.3d 1243, 1252–53 (11th Cir. 2013). Under Georgia law, the following four elements must be met for *res judicata* to apply: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999). Georgia law also provides that "*res judicata* applies not only to claims that were actually litigated, but to claims that could have been litigated in a prior action." *Starship Enters. of Atlanta, Inc.*, 708 F.3d at 1255 (citing O.C.G.A. § 9-12-40).

Defendants cite to multiple prior cases that Plaintiff has filed in arguing that *res judicata* bars the current action, and they attach filings related to those prior matters to their motion to dismiss. (Docs. 5-2, 5-3, 5-4, 5-5, 5-6, 5-7, 5-8, 5-9, 5-10, 5-11, 5-12, 5-13). In general, "a document attached to a [Rule 12(b)(6)] motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document: (1) is central to the plaintiff's claim; and (2) undisputed." *Horsely v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). However, a district court may also take judicial notice of certain facts, particularly "public records that were not subject to reasonable dispute because they were capable of accurate and ready determination by resort to sources whose accuracy could not be reasonably questioned," without converting a motion to dismiss into a motion for summary judgment. *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (internal quotation marks omitted); *see also Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 53–54 (11th Cir. 2006) (noting that a district court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment, and taking judicial notice of a complaint filed in another district court); *Tuscano v. Evening J. Ass'n*, 179 F. App'x 621, 623 n.3 (11th Cir. 2006) (citing *Young v. City of Augusta Through DeVaney*, 59 F.3d 1160, 1166 n.11 (11th Cir. 1995) (noting that a court may take judicial notice of another court's

order in the context of determining whether *res judicata* applies, at least for the limited purpose of recognizing the judicial action or the subject matter of the litigation)); *Harford v. Delta Air Lines, Inc.*, No. 1:06-cv-2218-WSD, 2008 WL 268820, at *2 (N.D. Ga. Jan. 30, 2008) (taking judicial notice of a filing before the bankruptcy court and considering it in ruling on the motion to dismiss). The Court therefore considers the orders of other courts that are attached to the motion to dismiss for purposes of assessing the applicability of *res judicata*.

To date, Plaintiff has filed approximately twelve lawsuits surrounding the property at issue here. (*See* Docs. 5-2, 5-3, 5-4, 5-5, 5-6, 5-7, 5-8, 5-9, 5-10, 5-11, 5-12, 5-13). For ease and clarity of the *res judicata* analysis, the Court focuses primarily on a case Plaintiff filed in the Southern District of Florida: *Hill v. Bank of N.Y. Mellon*, No. 15-21621-Civ-Scola, 2015 WL 12780630 (S.D. Fla. Aug. 31, 2015) (*Hill 8*).

In *Hill 8*, Judge Scola found that *res judicata* applied to bar Hill's suit against defendants Bank of New York Mellon and Bayview. 2015 WL 12780630, at *1, 5. Summarizing the seven preceding cases and the case at hand, Judge Scola found that all eight cases "seem[ed] to stem from [Hill's] objections to the assignment and transfer of her note and mortgage and [sought] to halt foreclosure proceedings against her." *Id.* at *3. Judge Scola proceeded through the *res judicata* analysis,

finding that: (1) each of Hill's prior suits was filed in a court of competent jurisdiction, including various Georgia state courts, United States District Courts, and the Eleventh Circuit Court of Appeals; (2) the prior adjudications had been on the merits, including a Superior Court of Fulton County's dismissal on *res judicata* grounds and multiple voluntary dismissals against both defendants; (3) both defendants were also parties to two other prior cases; and (4) Hill's claims stemmed from the same nucleus of operative facts as earlier cases, despite arising out of recent legal notices tendered by the defendants. *Id.* at *3–5. In support of the fourth requirement, Judge Scola noted that "[t]he focus of [Plaintiff's] claims revolve around purported deficiencies in the assignment of her loan documents and each of her lawsuits seeks to invalidate her mortgage" and challenge the defendants' standing to enforce her loan. *Id.* at * 5 (citing to Hill's statement in her complaint that she "seeks to have her title to remove the 'cloud of AWL's[4] instruments'" (Doc. 1 at 25)). Judge Scola concluded that "[a]ny and all claims

[4] Plaintiff's June 2014 case in the Superior Court of Fulton County indicates that AWL is an abbreviation for America's Wholesale Lender. (Doc. 5-5 at 29). The facts alleged in that case state that Plaintiff executed a promissory note in favor of AWL on October 6, 2005 and a security deed in favor of Mortgage Electronic Registration Systems, Inc. (MERS), "as grantee and nominee for AWL and AWL's successors and assigns, to finance the purchase of the property." *Id.*

relating to the standing of these Defendants to enforce Hill's Note and Mortgage were—or could have been brought—in Hill's previous lawsuits." *Id.*

Here, the Court finds that the four requirements for *res judicata* are met once again. First, *Hill 8* ended in a final judgment on the merits when the district court granted the defendants' motion to dismiss, finding that *res judicata* barred Plaintiff's claims. Second, *Hill 8* was decided by a court of competent jurisdiction, the Southern District of Florida.

Third, the parties in *Hill 8* are either identical to the parties in this action or in privity with them. Plaintiff and Bayview were both parties to *Hill 8*. And although Shellpoint was not a party to any of the earlier suits, Shellpoint was in privity with parties in the earlier suits. Courts in this circuit have held that "subsequent trustees, assignees, or assignors of a mortgage are in privity with one another." *Bouldin v. Mortg. Elec. Registration Sys., Inc.*, No. 1:14-cv-03214-TCB-RGV, 2015 WL 11517084, at *7 (N.D. Ga. Feb. 5, 2015), *adopted by* 2015 WL 11622462 (N.D. Ga. Feb. 23, 2015); *see also Gilford v. Bank of N.Y. Mellon as Tr. for CWALT, Inc.*, No. 1:18-CV-1567-SCJ-JSA, 2018 WL 4474648, at *8 (N.D. Ga. June 20, 2018), *adopted by* 2018 WL 4473153 (N.D. Ga. Jul. 26, 2018). Privity may also exist "where the party and nonparty have concurrent interests in the same property right." *Cordner v. Specialized Loan Servicing, LLC*, No. 1:15-CV-2090-TWT-JFK, 2016 WL 3675557, at

*13–14 (N.D. Ga. June 7, 2016), *adopted by* 2016 WL 3634722 (N.D. Ga. Jul. 7, 2016) (quoting *Bailey v. Deutsche Bank Tr. Co. Ams.*, No. 3:13-CV-00001 (CAR), 2013 WL 820411, at *2 (M.D. Ga. Mar. 5, 2013)). Plaintiff states, in her complaint, that Shellpoint has an interest or an alleged interest in the debt related to the subject property. (Doc. 1-1 at ¶ 5 ("Upon information and belief Shellpoint Mortgage Servicing is either an alleged party in interest, a debt collector, or . . . makes claim in the subject property . . . .")).

It appears that, since *Hill 8*, Plaintiff became aware that Shellpoint obtained an interest in Plaintiff's mortgage or note, and now shares an interest in the subject property debt with Bayview, meaning that Shellpoint and Bayview have concurrent interests in enforcing the same debt. As such, they are in privity with one another, and Shellpoint is in privity with a party to the earlier suits. Shellpoint also enjoys subsequent privity with America's Wholesale Lender (AWL) and Mortgage Electronic Registration Systems, Inc. (MERS). Shellpoint's interest is either in the promissory note in favor of AWL or the security deed in favor of MERS. (Doc. 5-5 at 29 (Fulton County Superior Court case finding that *res judicata* barred Plaintiff's claims against AWL, MERS, Bayview, and other defendants, and explaining the original execution of the promissory note and security deed)). MERS, as grantee and nominee for AWL, was in privity with AWL. Therefore,

regardless of what specific instrument Shellpoint has an interest in, Shellpoint is a subsequent privy of both AWL and MERS, as well as a privy of those parties' other privies, Bayview and Bank of New York Mellon, who were the defendants in *Hill 8*. (*See* Doc. 5-5 at 29–30 (finding that *res judicata* barred claims as to Bayview when Bayview was first named as a Defendant in the Fulton County Superior Court action, therefore implying that Bayview was in privity with AWL and MERS); Doc. 5-9 at 33 (noting that Plaintiff alleged in the 2014 Fulton County Superior Court case, two Northern District of Georgia cases, and *Hill 8* that MERS or AWL conveyed interests to Bank of New York Melon and Bayview)).

Fourth, the Court must determine whether the same causes of action were involved in both cases. The Eleventh Circuit has held that "the principal test for determining whether the causes of action are the same is whether the primary right and duty are the same in each case. In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form." *Ragsdale*, 193 F.3d at 1239. Two cases may be considered the same claim or cause of action for purposes of *res judicata* where the cases arise "out of the same nucleus of operative fact, or [are] based upon the same factual predicate." *Id*; *see also Milburn v. Aegis Wholesale Corp.*, No. 1:12-CV-1886-RWS, 2013 WL 1747915, at *3–4 (N.D. Ga. Apr. 22, 2013) (finding that a plaintiff's second suit was based on

the same factual predicate as his first suit—despite adding claims for fraudulent assignment and negligence and omitting claims for breach of implied covenant of good faith and fair dealing and slander of title—where, in both cases, the plaintiff challenged the defendant's authority to foreclose on the property and "[t]he same Property, Note, Security Deed, and Assignment [were] at issue in both suits"). Here, although Plaintiff is no longer challenging the assignment of the debt itself, she still challenges the interests other parties may have in the same subject property and seeks to prevent those parties from asserting such interest. (Doc. 1-1 at ¶¶ 7, 10–18). She again seeks to have her title quieted and to remove any cloud thereupon, this time asserting that any other party's interest in the property no longer exists, as any actions to foreclose or redeem the property "have been fully completed." *Id.* at ¶¶ 12, 17–18. *See Hill*, 2015 WL 12780630, at *5 (citing Plaintiff's complaint which stated that "Plaintiff seeks to have her title to remove the 'cloud of AWL's instruments.'" (Doc. 1 at 25)). (*See generally* Doc. 5-3 (case filed by Plaintiff in the Superior Court of Fulton County raising a claim to quiet title); Doc. 5-4 (case filed by Plaintiff in the Superior Court of Fulton County seeking a judgment declaring her sole owner of her property); Doc. 5-7 (case filed by Plaintiff in this court raising claims for quiet title, declaratory, and injunctive relief)). In short, the core factual predicate remains the same: Plaintiff is challenging the

interests of Defendants in her property and asserting that those interests no longer exist.

Based on the foregoing, the Court finds that *res judicata* bars Plaintiff's claims against Defendants, and that dismissal is warranted on that ground alone.[5]

## IV. CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that Plaintiff's amended motion to remand, (Doc. 24), be **DENIED**, that Plaintiff's initial motion to remand, (Doc. 17), be **DENIED AS MOOT**, and that Defendants' motion to dismiss, (Doc. 5), be **GRANTED**.

The Clerk is **DIRECTED** to terminate the reference to the undersigned.

**IT IS SO RECOMMENDED,** this 11th day of July, 2022.

CHRISTOPHER C. BLY
UNITED STATES MAGISTRATE JUDGE

[5] Having found that *res judicata* bars Plaintiff's claims, the Court declines to address Defendant's arguments as to the merits of Plaintiff's claims. Plaintiff has not responded substantively to Defendant's arguments on the merits, (*see* Doc. 9 at 4–5), and to delve into the merits would violate the interest behind *res judicata*. Indeed, in *Hill 8* Judge Scola found that *res judicata* barred Plaintiff's claims and did not further address the merits.